## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ENHANCED RECOVERY COMPANY, LLC,
a Delaware limited liability company,

CASE NO.:

        Plaintiff,

vs.

RACHEL FRADY,
a Florida resident,

        Defendant.

_____/

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

NOW COMES, Plaintiff Enhanced Recovery Company, LLC ("ERC" or "Plaintiff"), by and through its attorneys, and hereby complains of Defendant Rachel Frady ("Frady" or "Defendant") as follows:

### NATURE OF ACTION

1.      This is an action for preliminary and other injunctive relief and damages brought by ERC against Defendant, a former ERC employee now employed by a direct competitor of ERC, for breach of her employment agreement, trade secret misappropriation, breach of the duty of loyalty to ERC, conversion, violation of the Stored Communications Act ("SCA"), violation of the Computer Fraud and Abuse Act ("CFAA") and for the recovery of all documents, materials, and information that Defendant wrongfully misappropriated during her employment with ERC.

## PARTIES

2.      ERC is a Delaware limited liability company with its principal place of business in Jacksonville, Florida.   ERC conducts business in Florida by providing third party debt collection services to customers on a nationwide basis from its offices in Florida, including Jacksonville and Orange Park, Florida.

3.      Defendant is a citizen and resident of the State of Florida and a former quality assurance manager of ERC who signed an Employment Agreement ("Agreement") containing confidentiality, non-solicitation, and non-disclosure provisions.  A true and correct copy of the Agreement is attached hereto as Exhibit "A".

4.      Upon information and belief, Defendant is currently employed by Stellar Recovery, Inc. ("Stellar") at its offices located at 4500 Salisbury Road, Suite 105, Jacksonville, Florida 32216.

5.      Stellar is a direct competitor of ERC by engaging in the business of providing third party debt collection services within the same geographic scope of their business.

## JURISDICTION AND VENUE

6.      This court has subject matter jurisdiction over the claims for SCA and CFAA violations pursuant to 28 U.S.C. § 1331 and pendent jurisdiction over the breach of contract, misappropriation of trade secrets, and breach of duty of loyalty claims pursuant to 28 U.S.C. § 1367(a).

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)-(c) and Local Rule 1.02 because Defendant resides in the Middle District of Florida, and a substantial part of the events or omissions giving rise to the cause of action set forth in this Complaint arose in Duval County, Florida.

## GENERAL ALLEGATIONS

8.      This is an action regarding breach of contract, misappropriation of trade secrets, breach of duty of loyalty, conversion, and violations of the Stored Communications Act and Computer Fraud and Abuse Act.

9.      Upon information and belief, Defendant has used for her personal benefit, disclosed and will continue to disclose ERC's confidential information relating to its debt collection services including, but not limited to, client specific call procedures, fee procedures, credit bureau reporting, fraud procedures for each client, state-by-state legal information regarding debt collection services, policies and procedures regarding debt collection practices, information preservation, collections systems, data backup procedures, reconciliation processes, settlement payment processes, bank wire processes, general payment processes, non-standard transaction processes, mail room processes, banking system access procedures, data protection procedures, physical safety measures, third-party vendor procedures, quality assurance procedures, and recruiting/training methods.

A.      **ERC's Services**

10.     At all relevant times, ERC has been in the business of providing third party debt collection services to customers on a nationwide basis from its offices in Florida, including Jacksonville and Orange Park, Florida.

11.     ERC places great emphasis on developing on-going customer relations by providing quality debt collection services specifically tailored to focus on the individual needs of each customer.  ERC has spent many years and considerable sums of money developing its present client base and has invested considerable time, money and effort in developing and maintaining a solid relationship and goodwill with each of its clients.

3

12.     ERC has invested substantial time and money in developing confidential information or knowledge relating to its business and clients, including, but not limited to, client specific call procedures, fee procedures, credit bureau reporting, fraud procedures for each client, state-by-state legal information regarding debt collection services, policies and procedures regarding debt collection practices, information preservation, collections systems, data backup procedures, reconciliation processes, settlement payment processes, bank wire processes, general payment processes, non-standard transaction processes, mail room processes, banking system access procedures, data protection procedures, physical safety measures, third-party vendor procedures, quality assurance procedures, and recruiting/training methods.

13.     ERC's confidential business and client information is not known outside of ERC and is not readily ascertainable by the public. This information could be learned by others, if at all, only by the expenditure of considerable time, effort and expense, equivalent to the time, effort and expense devoted by ERC to the gathering, updating and compilation of that data.

14.     To ensure the confidentiality of its client and business information, ERC utilizes several methods to preserve the secrecy of its confidential information. For example, ERC requires all management employees to sign an agreement containing non-solicitation and non-disclosure provisions. ERC also requires low-level collection employees to sign confidentiality agreements prohibiting the use or disclosure of ERC's confidential information. Further, access to ERC's confidential information is limited to particular ERC employees and is restricted to non-personnel. Moreover, ERC implemented a hierarchy within the company, limiting access to certain confidential information to lower-level employees.

15.    ERC personnel are instructed not to show confidential information to persons outside of ERC, and all confidential and proprietary materials are required to be returned whenever an employee terminates employment.

**B.    Defendant's Improper Conduct**

16.    On or about January 3, 2005, Defendant was hired to work for ERC as an administrative assistant.  Defendant was subsequently promoted several times, including a promotion to Quality Assurance and Administration Manager on or about August 27, 2012.  On or about March 1, 2013, Defendant's title was changed to Quality Manager due to an organizational restructuring within ERC.  As a Quality Manager, Defendant worked at ERC's corporate headquarters, located at 8014 Bayberry Road, Jacksonville, Florida 32256.

17.    Among the measures utilized by ERC to preserve the secrecy of its confidential information is a requirement that all employees read and acknowledge the terms of ERC's Employee Handbook ("Handbook").  Defendant received a copy of the Handbook during her employment with ERC, and acknowledged receipt of the same.

18.    In consideration for her promotion to QC Dialer/Strategy Analyst on or about October 11, 2006, Defendant entered into the Agreement with ERC that contained non-solicitation and confidentiality provisions, as well as a provision requiring the return of ERC documents and property upon termination or resignation of employment.

19.    Specifically, the Agreement's Confidentiality of Information section stated:

> 1.    Information,  Employee acknowledges that in his/her position with Company Employee will be exposed to and receive information relating to the confidential affairs of Company or its affiliates, including but not limited to, business and marketing plans, client and employee lists, pricing and cost information, competitive data, financing, expansion plans, business policies and practices, and other information considered by Company or any of its affiliates to be confidential in the nature of trade secrets

(collectively, the "Confidential Information"). Employee agrees that during the term of this Agreement and for a period of one (1) year after the termination of this Agreement for any reason, Employee will keep the Confidential Information confidential, not use it for his personal benefit, or the benefit of any person or entity other than Company, and will not take or fail to take any action which will cause the Confidential Information to lose its confidential nature.

(Exh. A, § D, ¶ 1)

20.    Additionally, the Agreement provided that:

3.    Return of Confidential Information and Company Property. Employee acknowledges and agrees that all files, records, data, material and customer lists used or obtained by Employee in the course of his/her employment with Company are the property of Company and will not be removed from the Company's offices in any form without the Company's consent. Employee agrees to return to the Company, on or promptly after his/her resignation or termination, all Company property or copies thereof (in whatever form) including, but not limited to, files, records, computer access codes, credit cards, computer programs, keys, card key passes, manuals, documents, business plans and other property which Employee received or prepared or held to prepare in connection with his/her employment with Company.

(Exh. A, § D, ¶ 3)

21.    Regarding non-solicitation, the Agreement provided that:

1.    Nonsolicitation. Employee recognizes and acknowledges that Company has a substantial and legitimate business interest in protecting its investment in its employees and in Employee. Therefore, Employee agrees that during the term of this Agreement and for a period of one (1) year after the termination of this Agreement for any reason, Employee shall refrain from and will not directly or indirectly, as an independent contractor, employee, consultant, agent, partner, joint venture, or otherwise, solicit any of the employees of Company or its affiliates to terminate their employment.

2.    Specific Enforcement. Employee further consents to the issuance of a temporary restraining order, or preliminary, temporary or permanent injunction by any court of competent

6

jurisdiction to prohibit the breach of any provision of the Agreement or to maintain the status quo pending the outcome of legal proceedings which may be initiated and waive any requirement for the posting of a bond as a condition to the entry of such an injunction.

(Exh. A, § E, ¶¶ 1-2)

22.     As consideration for Defendant's acceptance of the terms of the Agreement, ERC employed Defendant and provided her access to its confidential information and information regarding ERC's largest clients with the belief that Defendant would not disclose this information to any third party or misappropriate such information for her own personal benefit or competitive use.

23.     Additionally, Defendant was provided with ERC's Information Security Policy ("Policy") that detailed the rules and restrictions for employees' use of ERC's electronic communications systems.

24.     Specifically, the Policy regarding the use of the internet and ERC's e-mail service provided that:

> Enhanced Recovery Company, LLC provides its employees with Internet access for company-related business purposes only. Employees may not use the internet during business hours on company equipment for non-business purposes.
>
> We reserve the right to monitor employee use of the Internet at any time without prior notice or consent of the employees. Employees waive their rights to privacy regarding any web site they may access. We also reserve the right to use the information we may learn of in any administrative, judicial, or other proceeding.

25.    Additionally, the Policy contained a confidentiality provision that stated:

> Removing account information or files from the office, or disclosing account information to a third party without the consent of Senior Management is prohibited. All policies, procedures, files and manuals are the sole property of Enhanced Recovery Company, LLC and may contain specific trade secrets. No employee shall disclose any of this material to a third party while they are employed, or thereafter. In the event that you leave employment of ERC for any reason, you are required to return all company materials in your possession. Company, client and consumer information is not to be discussed with any non-ERC employees.

26.    On or about October 14, 2013, Defendant submitted a written notice of resignation of her employment with ERC.

27.    Defendant's last date of employment with ERC was October 16, 2013.

28.    Defendant's access to ERC's electronic communications systems was terminated on the final date of her employment. However, in the weeks leading up to her resignation, Defendant sent ERC's proprietary and confidential information relating to its business and clients, including, but not limited to, client specific call procedures, fee procedures, credit bureau reporting, fraud procedures for each client, state-by-state legal information regarding debt collection services, policies and procedures regarding debt collection practices, information preservation, collections systems, data backup procedures, reconciliation processes, settlement payment processes, bank wire processes, general payment processes, non-standard transaction processes, mail room processes, banking system access procedures, data protection procedures, physical safety measures, third-party vendor procedures, quality assurance procedures, and recruiting/training methods, from her ERC-issued e-mail account to her personal email account.

29.     Upon information and belief, Defendant then immediately began providing services to Stellar and disclosed ERC's confidential information for the benefit of her new employer, Stellar.

30.     Upon information and belief, Defendant has used for her personal benefit, disclosed and will continue to disclose the above mentioned information to the detriment of ERC. Such detriment has caused and will continue to cause ERC financial loss that is difficult to calculate in terms of monetary value.

31.     This information is of significant value to ERC and constitutes trade secrets pursuant to Florida law.

32.     ERC has suffered financial injury and damage to its reputation as a result of Defendant's improper acquisition of ERC's property.

33.     Defendant will continue to engage in this improper conduct and ERC will continue to suffer irreparable injury unless Defendant's conduct is restrained by this Court.

34.     All conditions precedent to the maintenance of this action have occurred, have been waived, or have been performed.

## COUNT I
## BREACH OF CONTRACT

35.     ERC repeats and re-alleges each and every allegation contained in Paragraphs 10 through 32 and 34 of this Complaint as if fully set forth herein.

36.     The Agreement between Defendant and ERC is a valid and enforceable contract.

37.     ERC performed all of its obligations under the contract.

38.     Defendant breached, is breaching, and is threatening to breach the Agreement by: disclosing and misusing confidential information for the benefit of her new employer without the

prior written consent of ERC, and improperly obtaining ERC's property and failing to return the property upon her resignation.

39.     The Restrictive Covenants are enforceable restraints under Florida law.

40.     ERC has been damaged and faces irreparable injury.    Moreover, ERC is threatened with the future loss of employees, clients, and income in an amount which may be impossible to determine.

41.     ERC has no adequate remedy at law for Defendant's breaches. ERC is suffering and will continue to suffer irreparable harm because of the breaches described herein.

42.     Pursuant to the Agreement, Defendant acknowledged that ERC has the right to damages and to seek injunctive relief to enjoin such breach. (Exh. A, § E, ¶ 2 and § F, ¶ 2.)

43.     The Agreement provides ERC a clear right to equitable relief and such relief would not be contrary to the interest of the public generally.

44.     Accordingly, ERC specifically requests that Defendant immediately return and account for all confidential information delineated in paragraph 28 that she wrongfully misappropriated from ERC, and that she be enjoined from:

    (a)     using ERC's Confidential Information to for her personal benefit or the benefit of any third person, company, or other entity as provided in the Agreement, and

    (b)     using, divulging, disclosing, furnishing, or making accessible to any third person, company, or other entity any of ERC's confidential information.

45.     Immediate injunctive relief is required in order to limit ERC's irreparable injury to that which has already occurred.

WHEREFORE, ERC requests this Court to enter judgment for it against Defendant, Rachel Frady, and enter an Order:

(a)  Enjoining Defendant from violating the Agreement;

(b)  Awarding damages, including, but not limited to, an accounting and repayment of all profits, royalties, compensation and/or other benefits that Defendant directly or indirectly has realized or may realize as a result of her breach of the Agreement;

(c)  Awarding reasonable attorneys' fees and costs, and

(d)  Awarding such other relief as the court deems appropriate.

## COUNT II
## MISAPPROPRIATION OF TRADE SECRETS

46.  ERC repeats and realleges each and every allegation contained in Paragraphs 10 through 33 of this Complaint as if fully set forth herein.

47.  While employed by ERC, Defendant was entrusted with information pertaining to ERC's debt collection services including, but not limited to, specific call procedures, fee procedures, credit bureau reporting, fraud procedures for each client, state-by-state legal information regarding debt collection services, policies and procedures regarding debt collection practices, information preservation, collections systems, data backup procedures, reconciliation processes, settlement payment processes, bank wire processes, general payment processes, non-standard transaction processes, mail room processes, banking system access procedures, data protection procedures, physical safety measures, third-party vendor procedures, quality assurance procedures, and recruiting/training methods.

48.  This information constitutes trade secrets under Florida law. The information was and is secret and proprietary, ERC derives substantial economic value from its secrecy, and the

information has been the subject of efforts that were more than adequate and reasonable under the circumstances to protect its secrecy.

49.     Upon information and belief, Defendant misappropriated and is threatening to continue to misappropriate ERC's trade secrets.

50.     Upon information and belief, Defendant has utilized and disclosed ERC's trade secrets while working for Stellar.

51.     Defendant is intentionally and willfully misappropriating ERC's trade secrets in reckless disregard for ERC's rights.

52.     ERC has been damaged by Defendant's actual and threatened misappropriation of trade secrets.

53.     Alternatively, if this Court finds that ERC's damages or Defendant's unjust enrichment are not adequately proven, ERC is entitled to a reasonable royalty pursuant to Florida's Uniform Trade Secrets Act, § 688.004.

WHEREFORE, Plaintiff requests this Court to enter judgment for it and against Defendant and enter an Order:

(a)     Enjoining Defendant from using, disclosing or otherwise misappropriating its trade secret information;

(b)     Requiring Defendant to return all trade secrets misappropriated by Defendant through her unauthorized use of ERC's electronic communications systems;

(c)     Awarding damages, including, but not limited to, an accounting and repayment of all profits, compensation and/or other benefits that Defendant directly or indirectly has realized as a result of her misappropriation of ERC's trade secret information;

(d)     Awarding costs and attorneys' fees incurred in this action, and

(e)     Awarding such other relief as the court deems appropriate.

## COUNT III
## BREACH OF DUTY OF LOYALTY

54.     ERC repeats and re-alleges each and every allegation contained in Paragraphs 16 through 29, and paragraphs 32 and 33 of this Complaint as if fully set forth herein.

55.     While employed at ERC, Defendant was entrusted with ERC's confidential information relating to its business and clients, including, but not limited to, client specific call procedures, fee procedures, credit bureau reporting, fraud procedures for each client, state-by-state legal information regarding debt collection services, policies and procedures regarding debt collection practices, information preservation, collections systems, data backup procedures, reconciliation processes, settlement payment processes, bank wire processes, general payment processes, non-standard transaction processes, mail room processes, banking system access procedures, data protection procedures, physical safety measures, third-party vendor procedures, quality assurance procedures, and recruiting/training methods.

56.     While still employed by ERC and when she owed ERC a duty of loyalty, Defendant downloaded the information described in paragraph 55 for her personal benefit or competitive use.

57.     Defendant's aforementioned conduct constitutes a willful breach of her duty of loyalty to ERC that has caused and will continue to cause ERC harm if not restrained by this Court.

13

58.     Defendant engaged in this conduct maliciously, fraudulently, and oppressively with the wrongful intention of injuring ERC, with an improper motive amounting to malice, and in conscious disregard of ERC's rights.

59.     ERC has retained the undersigned attorneys to represent it in prosecuting this action. Defendant's conduct constitutes willful and malicious misappropriation pursuant to Florida's Uniform Trade Secrets Act, § 688.004. Defendant's conduct also constitutes a willful violation of her duty of loyalty. Therefore, ERC is entitled to, and hereby requests judgment for its reasonable and necessary attorneys' fees in bringing and prosecuting this action and any appeal.

WHEREFORE, Plaintiff requests this Court to enter judgment for it against Defendant and enter an Order:

(a)     Awarding punitive damages, to be proven at trial, for Defendant's breach of duty of loyalty;

(b)     Awarding ERC its reasonable attorneys' fees and costs incurred in bringing this action, and

(c)     Awarding such other relief as the court deems appropriate.

## COUNT IV
## VIOLATION OF THE STORED COMMUNICATIONS ACT

60.     ERC repeats and re-alleges each and every allegation contained in Paragraphs 16 through 29, and paragraphs 32 and 33 as if fully set herein.

61.     At all times relevant hereto, ERC's electronic communication systems were routinely involved in sending and receiving electronic communications in interstate commerce. As such, ERC's electronic communications systems constitute an "electronic communication service" within the meaning of 18 U.S.C. § 2510(15).

14

62.     As a Quality Assurance Manager, ERC provided Defendant with access to ERC's electronic communications systems. Such access to the system was expressly limited to business purposes only as stated in ERC's Information Security Policy.

63.     ERC never authorized Defendant to copy, delete, modify, download or otherwise appropriate any communications in the electronic communications system for her personal use or the use of another competing person, entity, or company.

64.     On or about September 16, 23, and 30, as well as October 1 through 3, and 7 through 9, 2013, Defendant intentionally exceeded her authorization to access ERC's electronic communications systems by misappropriating ERC's electronic communications containing confidential information pertaining to ERC's debt collection services including, but not limited to, client specific call procedures, fee procedures, credit bureau reporting, fraud procedures for each client, state-by-state legal information regarding debt collection services, policies and procedures regarding debt collection practices, information preservation, collections systems, data backup procedures, reconciliation processes, settlement payment processes, bank wire processes, general payment processes, non-standard transaction processes, mail room processes, banking system access procedures, data protection procedures, physical safety measures, third-party vendor procedures, quality assurance procedures, and recruiting/training methods. Such action was in violation of the Stored Communications Act, 18 U.S.C. § 2701, *et. seq.*

65.     Upon information and belief, Defendant misappropriated such information for her own personal benefit and/or the benefit of her new employer, Stellar.

66.     Defendant's unauthorized access and use of ERC's electronic communication system has damaged ERC.

67.    ERC is entitled to an award of its attorneys' fees and costs in connection with this dispute, pursuant to 18 U.S.C. § 2707(b)(3) and (c).

WHEREFORE, Plaintiff requests this Court to enter judgment for it against Defendant and enter an Order:

(a)    Awarding compensatory and special damages to ERC;

(b)    Requiring Defendant to return any information misappropriated by Defendant through her unauthorized use of ERC's electronic communications systems;

(c)    Awarding the reasonable attorneys' fees and costs incurred by ERC in bringing this action, and

(d)    Awarding such other relief as the court deems appropriate.

### COUNT V
### VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

68.    ERC repeats and re-alleges each and every allegation contained in Paragraphs 60 through 66, as if fully set herein.

69.    At all times relevant hereto, ERC's electronic communication systems were routinely involved in sending and receiving electronic communications in interstate commerce. As such, ERC's electronic communications systems constitute an "electronic communication service" within the meaning of 18 U.S.C. § 1030(e)(2)(B).

70.    As a Quality Assurance Manager, ERC provided Defendant with access to ERC's electronic communications systems. Such access to the system was expressly limited to business purposes only as outlined in ERC's Information Security Policy.

71.    ERC never authorized Defendant to copy, delete, modify, download or otherwise appropriate any communications in the electronic communications system for her personal use or the use of another competing person, entity, or company.

72.     On or about September 16, 23, and 30, as well as October 1-3, and 7-9, 2013, Defendant intentionally exceeded her authorization to access ERC's electronic communications systems by misappropriating ERC's electronic communications containing information pertaining to ERC's debt collection services including, but not limited to, client specific call procedures, fee procedures, credit bureau reporting, fraud procedures for each client, state-by-state legal information regarding debt collection services, policies and procedures regarding debt collection practices, information preservation, collections systems, data backup procedures, reconciliation processes, settlement payment processes, bank wire processes, general payment processes, non-standard transaction processes, mail room processes, banking system access procedures, data protection procedures, physical safety measures, third-party vendor procedures, quality assurance procedures, and recruiting/training methods.  Such action was in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

73.     Upon information and belief, Defendant misappropriated such information for her own personal benefit and/or the benefit of her new employer, Stellar.

74.     Defendant's unauthorized access and use of ERC's electronic communication systems has damaged ERC in excess of $5,000.00.

75.     ERC is entitled to an award of its attorneys' fees and costs in connection with this dispute, pursuant to 18 U.S.C. § 2707(b)(3) and (c).

WHEREFORE, Plaintiff requests this Court to enter judgment for it against Defendant and enter an Order:

(a)     Awarding compensatory and special damages to ERC;

(b)     Requiring Defendant to return any information misappropriated by Defendant through her unauthorized use of ERC's electronic communications systems;

17

(c)     Awarding the reasonable attorneys' fees and costs incurred by ERC in bringing

this action, and

(d)     Awarding such other relief as the court deems appropriate.

## COUNT VI
## CONVERSION

76.     ERC repeats and re-alleges each and every allegation contained in Paragraphs 16

through 29, and paragraphs 31 and 32 as if fully set herein.

77.     ERC is the owner of its electronic communications involving information

pertaining to ERC's debt collection services including, but not limited to, client specific call

procedures, fee procedures, credit bureau reporting, fraud procedures for each client, state-by-

state legal information regarding debt collection services, policies and procedures regarding debt

collection practices, information preservation, collections systems, data backup procedures,

reconciliation processes, settlement payment processes, bank wire processes, general payment

processes, non-standard transaction processes, mail room processes, banking system access

procedures, data protection procedures, physical safety measures, third-party vendor procedures,

quality assurance procedures, and recruiting/training methods.

78.     Defendant exercised dominion or authority over ERC's property by downloading

ERC's property as delineated in paragraph 77.

79.     Defendant's exercise of dominion and control over ERC's property is

inconsistent with and adverse to the rights of ERC.

80.     ERC has been damaged as a result of Defendant's actions.

WHEREFORE, Plaintiff requests this Court to enter judgment for it against Defendant

and enter an Order:

(a)     Awarding compensatory damages to ERC;

18

(b)    Requiring Defendant to return any information, in whatever form or current state, misappropriated by Defendant;

(c)    Awarding the reasonable attorneys' fees and costs incurred by ERC in bringing this action, and

(d)    Awarding such other relief as the court deems appropriate.


Dated:  October 22, 2013

Respectfully Submitted,


SMITH, GAMBRELL & RUSSELL, LLP


By: s/Patricia J. Hill
       Patricia J. Hill, Esquire
       Florida Bar No. 0091324
       Yash B. Dave, Esquire
       Florida Bar No. 0068573
       50 N. Laura Street, Suite 2600
       Jacksonville, FL  32202
       Telephone:(904) 598-6100
       Facsimile: (904) 598-6240
       Email:  pjhill@sgrlaw.com
       Email:  ydave@sgrlaw.com

*Attorneys for Plaintiff Enhanced Recovery Company, LLC*