**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ENHANCED RECOVERY COMPANY, LLC,
a Delaware limited liability company,

                                    **CASE NO.: 3:13-cv-01262-MMH-JBT**

                Plaintiff,

vs.


RACHEL FRADY, a Florida resident,
LIZA ACKLEY, a Florida resident,
And STELLAR RECOVER, INC., a Florida
Corporation,

                Defendants.

_____/


**PLAINTIFF'S SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND**
**DAMAGES**

      NOW COMES, Plaintiff Enhanced Recovery Company, LLC ("ERC" or "Plaintiff"), by and through its attorneys, and hereby complains of Defendants Rachel Frady ("Frady"), Liza Akley ("Akley"), and Stellar Recovery, Inc. ("Stellar") as follows:

**NATURE OF ACTION**

      1.     This is an action for preliminary and other injunctive relief and damages brought by ERC against Defendants Frady, Akley and Stellar for violations of the Computer Fraud and Abuse Act ("CFAA"), Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), conversion, and misappropriation of trade secrets and civil conspiracy, in connection with the wrongful acquisition of ERC's confidential, proprietary, and trade secret information for the purpose of competing directly with ERC. Prior to accepting employment with Stellar, and while still working with ERC, Frady forwarded ERC's confidential, proprietary, and trade secret

information from her ERC work e-mail account to her personal e-mail account.  Frady then forwarded ERC's confidential information from her personal e-mail account to Defendant Akley, the Chief Operating Officer of Stellar.  Akley then transferred ERC's information from her personal e-mail account to her Stellar work e-mail account and to other Stellar employees with full knowledge of the nature of the information received from Frady.  On information and belief, Akley and Stellar solicited, directed, induced, or encouraged  Frady to misappropriate ERC's information to the detriment of ERC and are accepting the benefits of that misappropriation.  In addition to the above-described causes of action, ERC brings additional claims individually against Frady for breach of her employment agreement,  breach of her duty of loyalty to ERC, and violation of the Stored Communications Act ("SCA").

## PARTIES

2.     ERC is a Delaware limited liability company with its principal place of business in Jacksonville, Florida.  ERC conducts business in Florida by providing third party debt collection services to customers on a nationwide basis from its offices in Florida, including Jacksonville and Orange Park, Florida.

3.     Defendant Frady is a citizen and resident of the State of Florida and a former quality assurance manager of ERC who signed an Employment Agreement ("Agreement") containing confidentiality, non-solicitation, and non-disclosure provisions.  A true and correct copy of the Agreement is attached hereto as Exhibit "A".

4.     Upon information and belief, Defendant Frady is currently employed by Stellar Recovery, Inc. ("Stellar"), a direct competitor of ERC that engages in the business of providing third party debt collection services within the same geographic scope of their business.

5.     Defendant Stellar is a Florida corporation with its principal place of business located at 4500 Salisbury Road, Suite 105, Jacksonville, Florida 32216.

6.     Upon information and belief, Defendant Akley is a citizen and resident of the State of Florida and is currently the Chief Operating Officer ("COO") of Stellar.  Prior to July 30, 2013, Akley was formerly ERC's Vice President of Operational Support.

## JURISDICTION AND VENUE

7.     This court has subject matter jurisdiction over the claims for SCA and CFAA violations pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the breach of contract, conversion, misappropriation of trade secrets, civil conspiracy, Florida Deceptive and Unfair Trade Practices Act, and breach of duty of loyalty claims pursuant to 28 U.S.C. § 1367(a).

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)-(c) and Local Rule 1.02 because Defendants reside in the Middle District of Florida, and a substantial part of the events or omissions giving rise to the cause of action set forth in this Complaint arose in Duval County, Florida.

## GENERAL ALLEGATIONS

9.     This is an action regarding breach of contract, misappropriation of trade secrets, breach of duty of loyalty, conversion, civil conspiracy and violations of the Florida Deceptive and Unfair Trade Practices Act, Stored Communications Act, and Computer Fraud and Abuse Act.

10.     Frady exceeded her authorized access and obtained ERC's proprietary, confidential, and trade secret information from its electronic communications systems at the direction, control, encouragement, or inducement of Stellar and its COO, Liza Akley. Defendants Frady, Akley, and Stellar have used, disclosed and will continue to use and disclose

ERC's confidential information relating to its debt collection services including, but not limited to, client specific call procedures, fee procedures, credit bureau reporting, fraud procedures for each client, state-by-state legal information regarding debt collection services, policies and procedures regarding debt collection practices, information preservation, collections systems, data backup procedures, reconciliation processes, settlement payment processes, bank wire processes, general payment processes, non-standard transaction processes, mail room processes, banking system access procedures, data protection procedures, physical safety measures, third-party vendor procedures, quality assurance procedures, and recruiting/training methods.

A.    **ERC's Services**

11.    At all relevant times, ERC has been in the business of providing third party debt collection services to customers on a nationwide basis from its offices in Florida, including Jacksonville and Orange Park, Florida.

12.    ERC places great emphasis on developing on-going customer relations by providing quality debt collection services specifically tailored to focus on the individual needs of each client.  ERC has spent many years and considerable sums of money developing its present client base and has invested considerable time, money and effort in developing and maintaining a solid relationship and goodwill with each of its clients.

13.    ERC has invested substantial time and money in developing confidential information or knowledge relating to its business and clients, including, but not limited to, client specific call procedures, fee procedures, credit bureau reporting, fraud procedures for each client, state-by-state legal information regarding debt collection services, policies and procedures regarding debt collection practices, information preservation, collections systems, data backup procedures, reconciliation processes, settlement payment processes, bank wire processes, general

payment processes, non-standard transaction processes, mail room processes, banking system access procedures, data protection procedures, physical safety measures, third-party vendor procedures, quality assurance procedures, and recruiting/training methods.

14.     ERC's confidential business and client information is not known outside of ERC and is not readily ascertainable by the public.  This information could be learned by others, if at all, only by the expenditure of considerable time, effort and expense, equivalent to the time, effort and expense devoted by ERC to the gathering, updating and compilation of that data.

15.     To ensure the confidentiality of its client and business information, ERC utilizes several methods to preserve the secrecy of its confidential information.  For example, ERC requires all management employees to sign an agreement containing non-solicitation and non-disclosure provisions.  ERC also requires low-level collection employees to sign confidentiality agreements prohibiting the use or disclosure of ERC's confidential information.  Further, access to ERC's confidential information is limited to particular ERC employees and is restricted to non-personnel.  Moreover, ERC implemented a hierarchy within the company, limiting access to certain confidential information to lower-level employees.

16.     ERC personnel are instructed not to access ERC's confidential information for non-business purposes or show confidential information to persons outside of ERC, and all confidential and proprietary materials are required to be returned whenever an employee terminates employment.

**B.     Frady's Employment with ERC**

17.     On or about January 3, 2005, Frady was hired to work for ERC as an administrative assistant.  Frady was subsequently promoted several times, including a promotion to Quality Assurance and Administration Manager on or about August 27, 2012.  On or about

March 1, 2013, Frady's title was changed to Quality Manager due to an organizational restructuring within ERC.   As a Quality Manager, Frady worked at ERC's corporate headquarters, located at 8014 Bayberry Road, Jacksonville, Florida 32256.

18.     Among the measures utilized by ERC to preserve the secrecy of its confidential information is a requirement that all employees read and acknowledge the terms of ERC's Employee Handbook ("Handbook").   Frady received a copy of the Handbook during her employment with ERC, and acknowledged receipt of the same.

19.     In consideration for her promotion to QC Dialer/Strategy Analyst on or about October 11, 2006, Frady entered into the Agreement with ERC that contained non-solicitation and confidentiality provisions, as well as a provision requiring the return of ERC documents and property upon termination or resignation of employment.

20.     Specifically, the Agreement's Confidentiality of Information section stated:

> 1.     Information, Employee acknowledges that in his/her position with Company Employee will be exposed to and receive information relating to the confidential affairs of Company or its affiliates, including but not limited to, business and marketing plans, client and employee lists, pricing and cost information, competitive data, financing, expansion plans, business policies and practices, and other information considered by Company or any of its affiliates to be confidential in the nature of trade secrets (collectively, the "Confidential Information").   Employee agrees that during the term of this Agreement and for a period of one (1) year after the termination of this Agreement for any reason, Employee will keep the Confidential Information confidential, not use it for his personal benefit, or the benefit of any person or entity other than Company, and will not take or fail to take any action which will cause the Confidential Information to lose its confidential nature.

(Exh. A, § D, ¶ 1)

21.     Additionally, the Agreement provided that:

3.      Return of Confidential Information and Company Property. Employee acknowledges and agrees that all files, records, data, material and customer lists used or obtained by Employee in the course of his/her employment with Company are the property of Company and will not be removed from the Company's offices in any form without the Company's consent.  Employee agrees to return to the Company, on or promptly after his/her resignation or termination, all Company property or copies thereof (in whatever form) including, but not limited to, files, records, computer access codes, credit cards, computer programs, keys, card key passes, manuals, documents, business plans and other property which Employee received or prepared or held to prepare in connection with his/her employment with Company.

(Exh. A, § D, ¶ 3)

22.     Regarding non-solicitation, the Agreement provided that:

1.      Nonsolicitation. Employee recognizes and acknowledges that Company has a substantial and legitimate business interest in protecting its investment in its employees and in Employee. Therefore, Employee agrees that during the term of this Agreement and for a period of one (1) year after the termination of this Agreement for any reason, Employee shall refrain from and will not directly or indirectly, as an independent contractor, employee, consultant, agent, partner, joint venture, or otherwise, solicit any of the employees of Company or its affiliates to terminate their employment.

2.      Specific Enforcement. Employee further consents to the issuance of a temporary restraining order, or preliminary, temporary or permanent injunction by any court of competent jurisdiction to prohibit the breach of any provision of the Agreement or to maintain the status quo pending the outcome of legal proceedings which may be initiated and waive any requirement for the posting of a bond as a condition to the entry of such an injunction.

(Exh. A, § E, ¶¶ 1-2)

23.     As consideration for Frady's acceptance of the terms of the Agreement, ERC employed Frady and provided her access to its confidential information and information

regarding ERC's largest clients, for business purposes only, with the belief that Frady would not disclose this information to any third party or misappropriate such information for her own personal benefit or competitive use.

24.     Additionally, Frady was provided with ERC's Information Security Policy ("Policy") that detailed the rules and restrictions for employees' use of ERC's electronic communications systems.

25.     Specifically, the Policy regarding the use of the internet and ERC's e-mail service provided that:

> Enhanced Recovery Company, LLC provides its employees with Internet access for company-related business purposes only. Employees may not use the internet during business hours on company equipment for non-business purposes.
>
> We reserve the right to monitor employee use of the Internet at any time without prior notice or consent of the employees. Employees waive their rights to privacy regarding any web site they may access. We also reserve the right to use the information we may learn of in any administrative, judicial, or other proceeding.

26.     Additionally, the Policy contained a confidentiality provision that stated:

> Removing account information or files from the office, or disclosing account information to a third party without the consent of Senior Management is prohibited. All policies, procedures, files and manuals are the sole property of Enhanced Recovery Company, LLC and may contain specific trade secrets. No employee shall disclose any of this material to a third party while they are employed, or thereafter. In the event that you leave employment of ERC for any reason, you are required to return all company materials in your possession. Company, client and consumer information is not to be discussed with any non-ERC employees.

27.     Frady's last date of employment with ERC was October 16, 2013.

**C.** **Frady Transmits ERC's Confidential and Proprietary Information to Akley**

28.     Throughout the latter period of her employment, Frady remained in near constant contact with Akley, ERC's former Vice President of Operational Support.

29.     Akley was employed by ERC until on or about July 30, 2013.  Akley is now employed by Stellar as its COO.  Frady made numerous calls to Akley during the period of July, 2013 through October, 2013.

30.     On or about October 14, 2013, Frady submitted a written notice of resignation of her employment with ERC.

31.     Frady's access to ERC's electronic communications systems was terminated on the final date of her employment.  However, in the weeks leading up to her resignation, and on many occasions pursuant to the request or instruction of Akley, Frady accessed and transmitted, without authorization or for a legitimate business purpose, ERC's proprietary and confidential information relating to its business and clients, including, but not limited to, client specific call procedures, fee procedures, credit bureau reporting, fraud procedures for each client, state-by-state legal information regarding debt collection services, policies and procedures regarding debt collection practices, information preservation, collections systems, data backup procedures, reconciliation processes, settlement payment processes, bank wire processes, general payment processes, non-standard transaction processes, mail room processes, banking system access procedures, data protection procedures, physical safety measures, third-party vendor procedures, quality assurance procedures, and recruiting/training methods, from her ERC-issued e-mail account to her personal email account.

32.     Frady forwarded ERC's information directly to Akley's personal e-mail account. Frady purports that she forwarded this information because her iPhone was "not practical for document storage."  However, Frady deleted the e-mails she forwarded from both her ERC work e-mail account and her personal e-mail account in an attempt to cover her tracks and avoid detection.

33.     Rather than deleting the unlawfully obtained information, Akley forwarded ERC's information received from Frady directly to Akley's Stellar work e-mail account.

34.     Frady then immediately began providing services to Stellar.  Frady is currently employed as the Director of Quality Assurance at Stellar.

**D.      Akley Requests Additional Information from Frady**

35.     Upon information and belief, Defendants Akley and Stellar solicited the assistance of, encouraged, directed, or induced Defendant Frady to misappropriate ERC's confidential and proprietary information in an attempt to further develop their competing business to the detriment of ERC.  Akley was fully aware that Frady was still an employee of ERC when Frady forwarded ERC's information, and knew or should have known that Frady had a duty to ERC to maintain the information's secrecy.  However, upon information and belief, Akley directly solicited Frady to obtain ERC's information on several occasions.

36.     Upon information and belief, Defendant Stellar explicitly or implicitly knew that Defendants Frady and Akley were misappropriating ERC's  confidential and proprietary information to the detriment of ERC.  Akley forwarded the information received from Frady directly to her Stellar work e-mail account.   Akley then forwarded ERC's confidential information to other Stellar personnel within the scope and course of her employment with, and for the benefit of, Stellar.

37.     Upon information and belief, Frady has used and disclosed, and will continue to use and disclose the above-mentioned information for Akley's, Stellar's, and her own personal benefit.  Defendants' conduct in misappropriating this information has caused, and will continue to cause, ERC financial loss that is difficult to calculate in terms of monetary value.

38.     This information is of significant value to ERC and constitutes trade secrets pursuant to Florida law.

39.     ERC has suffered financial injury and damage to its reputation as a result of Defendants' unauthorized acquisition of ERC's property.

40.     Defendants will continue to engage in this improper conduct and ERC will continue to suffer irreparable injury unless Defendants' conduct is restrained by this Court.

41.     All conditions precedent to the maintenance of this action have occurred, have been waived, or have been performed.

**COUNT I**
**BREACH OF CONTRACT**
**(As to Defendant Frady Only)**

42.     ERC repeats and re-alleges each and every allegation contained in Paragraphs 10 through 34, 37, and 39 through 41 of this Complaint as if fully set forth herein.

43.     The Agreement between Frady and ERC is a valid and enforceable contract.

44.     ERC performed all of its obligations under the contract.

45.     Frady breached, is breaching, and is threatening to breach the Agreement by: disclosing and misusing confidential information for the benefit of her new employer without the prior written consent of ERC, and improperly obtaining ERC's property and failing to return the property upon her resignation.

46.     The Restrictive Covenants are enforceable restraints under Florida law.

47.     ERC has been damaged, has lost the exclusive use of its confidential information, and faces irreparable injury.  Moreover, ERC is threatened with the future loss of employees, clients, and income in an amount which may be impossible to determine.

48.     ERC has no adequate remedy at law for Frady's breaches.  ERC is suffering and will continue to suffer irreparable harm because of the breaches described herein.

49.     Pursuant to the Agreement, Frady acknowledged that ERC has the right to damages and to seek injunctive relief to enjoin such breach.  (Exh. A, § E, ¶ 2 and § F, ¶ 2.)

50.     The Agreement provides ERC a clear right to equitable relief and such relief would not be contrary to the interest of the public generally.

51.     Accordingly, ERC specifically requests that Frady immediately return and account for all confidential information delineated in paragraph 31 that she wrongfully misappropriated from ERC, and that she be enjoined from:

(a)     using ERC's Confidential Information to for her personal benefit or the benefit of any third person, company, or other entity as provided in the Agreement, and

(b)     using, divulging, disclosing, furnishing, or making accessible to any third person, company, or other entity any of ERC's confidential information.

52.     Immediate injunctive relief is required in order to limit ERC's irreparable injury to that which has already occurred.

WHEREFORE, ERC requests this Court to enter judgment for it against Defendant Rachel Frady, and enter an Order:

(a)     Enjoining Frady from violating the Agreement;

(b)     Awarding monetary damages, including, but not limited to, an accounting and repayment of all profits, royalties, compensation and/or other benefits that Frady

directly or indirectly has realized or may realize as a result of her breach of the Agreement;

(c)     Awarding reasonable attorneys' fees and costs, and

(d)     Awarding such other relief as the Court deems appropriate.

**COUNT II**
**BREACH OF DUTY OF LOYALTY**
**(As to Defendant Frady Only)**

53.     ERC repeats and re-alleges each and every allegation contained in Paragraphs 17 through 19, 23 through 34, and paragraphs 37 and 39 of this Complaint as if fully set forth herein.

54.     While employed at ERC, Frady was entrusted with ERC's confidential and trade secret information relating to its business and clients, including, but not limited to, client specific call procedures, fee procedures, credit bureau reporting, fraud procedures for each client, state-by-state legal information regarding debt collection services, policies and procedures regarding debt collection practices, information preservation, collections systems, data backup procedures, reconciliation processes, settlement payment processes, bank wire processes, general payment processes, non-standard transaction processes, mail room processes, banking system access procedures, data protection procedures, physical safety measures, third-party vendor procedures, quality assurance procedures, and recruiting/training methods.

55.     While still employed by ERC and when she owed ERC a duty of loyalty, Frady downloaded the information described in paragraph 31 for her personal benefit or competitive use.

56.     Frady's aforementioned conduct constitutes a willful breach of her duty of loyalty to ERC that has caused and will continue to cause ERC harm if not restrained by this Court.

57.     Frady engaged in this conduct maliciously, fraudulently, and oppressively with the wrongful intention of injuring ERC, with an improper motive amounting to malice, and in conscious disregard of ERC's rights.

58.     ERC retained the undersigned attorneys to represent it in prosecuting this action. Frady's conduct constitutes willful and malicious misappropriation pursuant to Florida's Uniform Trade Secrets Act, § 688.004.  Frady's conduct also constitutes a willful violation of her duty of loyalty.  Therefore, ERC is entitled to, and hereby requests judgment for its reasonable and necessary attorneys' fees in bringing and prosecuting this action and any appeal.

WHEREFORE, Plaintiff requests this Court to enter judgment for it against Defendant Rachel Frady and enter an Order:

(a)     Awarding compensatory and punitive damages, to be proven at trial, for Frady's breach of duty of loyalty;

(b)     Awarding ERC its reasonable attorneys' fees and costs incurred in bringing this action, and

(c)     Awarding such other relief as the court deems appropriate.

## COUNT III
## VIOLATION OF THE STORED COMMUNICATIONS ACT
### (As to Defendant Frady Only)

59.     ERC repeats and re-alleges each and every allegation contained in Paragraphs 15 through 21, 23 through 34, and paragraphs 37 and 39 as if fully set forth herein.

60.     At all times relevant hereto, ERC's electronic communication systems were routinely involved in sending and receiving electronic communications in interstate commerce. As such, ERC's electronic communications systems constitute an "electronic communication service" within the meaning of 18 U.S.C. § 2510(15).

61.     As a Quality Assurance Manager, ERC provided Frady with access to ERC's electronic communications systems.  Such access to the systems was expressly limited to business purposes only as stated in ERC's Information Security Policy.

62.     ERC never authorized Frady to copy, delete, modify, download or otherwise appropriate any confidential information in the electronic communications systems for her personal use or the use of another competing person, entity, or company.

63.     On or about September 16, 23, and 30, as well as October 1 through 3, and 7 through 9, 2013, Frady intentionally exceeded her authorization to access ERC's electronic communications systems and  accessed, without authorization, ERC's confidential information, located on ERC's electronic servers, pertaining to ERC's debt collection services including, but not limited to, client specific call procedures, fee procedures, credit bureau reporting, fraud procedures for each client, state-by-state legal information regarding debt collection services, policies and procedures regarding debt collection practices, information preservation, collections systems, data backup procedures, reconciliation processes, settlement payment processes, bank wire processes, general payment processes, non-standard transaction processes, mail room processes, banking system access procedures, data protection procedures, physical safety measures, third-party vendor procedures, quality assurance procedures, and recruiting/training methods, in violation of ERC policy.  Such action was contrary to ERC's narrow policy limiting the use and disclosure of its confidential information to business purposes only.  Therefore, Frady's actions violated the Stored Communications Act, 18 U.S.C. § 2701, *et. seq.*

64.     Upon information and belief, Frady misappropriated such information for her own personal benefit and/or the benefit of her new employer, Stellar.

65.     Frady's unauthorized access and use of ERC's electronic communication systems for non-business purposes violated ERC policy and damaged ERC.

66.     ERC is entitled to an award of its attorneys' fees and costs in connection with this dispute, pursuant to 18 U.S.C. § 2707(b)(3) and (c).

WHEREFORE, Plaintiff requests this Court to enter judgment for it against Defendant Rachel Frady and enter an Order:

(a)     Awarding compensatory and special damages to ERC;

(b)     Requiring Frady to return any information misappropriated by Frady through her unauthorized use of ERC's electronic communications systems;

(c)     Awarding the reasonable  attorneys' fees and costs incurred by ERC in bringing this action, and

(d)     Awarding such other relief as the court deems appropriate.

**COUNT IV**
**MISAPPROPRIATION OF TRADE SECRETS**
**(As to All Defendants)**

67.     ERC repeats and realleges each and every allegation contained in Paragraphs 12 through 41of this Complaint as if fully set forth herein.

68.     While employed by ERC, Frady exceeded her authorized access and  downloaded and disclosed to third parties information pertaining to ERC's debt collection services including, but not limited to, specific call procedures, fee procedures, credit bureau reporting, fraud procedures for each client, state-by-state legal information regarding debt collection services, policies and procedures regarding debt collection practices, information preservation, collections systems, data backup procedures, reconciliation processes, settlement payment processes, bank wire processes, general payment processes, non-standard transaction processes, mail room

processes, banking system access procedures, data protection procedures, physical safety measures, third-party vendor procedures, quality assurance procedures, and recruiting/training methods.

69.     This information constitutes trade secrets under Florida law.  The information was and is secret and proprietary, ERC derives substantial economic value from its secrecy, and the information has been the subject of efforts that were more than adequate and reasonable under the circumstances to protect its secrecy.   Much of the information misappropriated relates directly to ERC's business protocols and procedures that have been developed through years of experience in the third-party debt collection service industry including.   Upon information and belief, Stellar has used this information to mirror and streamline its policies and procedures regarding third-party debt collection services in furtherance of developing its competing business.   Additionally, the information misappropriated includes specific financials for client accounts that could be used by Stellar in an effort to unfairly target and underbid ERC for future client contracts.

70.     Upon information and belief, Frady has utilized and disclosed ERC's trade secrets in furtherance of her employment with Stellar.

71.     Upon information and belief, Stellar and Akley directed, encouraged, or induced Frady to acquire ERC's trade secrets.

72.     Frady's and Akley's misappropriation of ERC's trade secrets for the benefit of Stellar gave Defendants an unearned, unfair and unjust advantage in operating a competing business.

73.     As alleged above, Stellar explicitly or implicitly took part in, encouraged, directed, induced, had knowledge of, and/or benefitted from Frady's and Akley's

misappropriation of ERC's trade secrets.    Further, Stellar knew or had reason to know that ERC's trade secrets were acquired by Defendants Frady and Akley under circumstances giving rise to Frady's duty to ERC to maintain their secrecy.

74.    Stellar knows or has reason to know that ERC's trade secrets have been used, disclosed, and/or will be used and disclosed by Defendants Frady and Akley in Stellar's efforts to compete directly with ERC's business.

75.    Defendants did not have ERC's consent, express or implied, to appropriate or disclose ERC's trade secrets for their own use or benefit or for the use or benefit of any third party.

76.    Defendants  have intentionally and willfully misappropriated ERC's trade secrets in reckless disregard for ERC's rights.

77.    ERC has been damaged by Defendants' actual and threatened misappropriation of trade secrets.

78.    Defendants' disclosure and/or use of ERC's trade secrets will further result in immediate and irreparable harm to ERC for which there is no adequate remedy at law.

79.    Alternatively, if this Court finds that ERC's damages or Defendants' unjust enrichment are not adequately proven, ERC is entitled to a reasonable royalty pursuant to Florida's Uniform Trade Secrets Act, § 688.004(1).

WHEREFORE, Plaintiff requests this Court to enter judgment for it and against Defendants and enter an Order:

(a)    Enjoining Defendants from using, disclosing or otherwise misappropriating its trade secret information;

(b)    Requiring Defendants to return all trade secrets misappropriated by Defendants;

(c)     Awarding damages, including, but not limited to, an accounting and repayment of all profits, compensation and/or other benefits that Defendants directly or indirectly have realized as a result of their misappropriation of ERC's trade secret information pursuant to Fla. Stat. 688.004(1);

(d)     Awarding exemplary damages due to Defendants' willful and malicious misappropriation of ERC's trade secrets pursuant to Fla. Stat. 688.004(2);

(e)     Awarding costs and attorneys' fees incurred in this action pursuant to Fla. Stat. § 688.005, and

(f)     Awarding such other relief as the court deems appropriate.

## COUNT V
## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
### (As to All Defendants)

80.     ERC repeats and re-alleges each and every allegation contained in Paragraphs 15 through 21, 23 through 34, 37, 39, and Paragraphs 59 through 65 as if fully set forth herein.

81.     At all times relevant hereto, ERC's electronic communications systems were routinely involved in sending and receiving electronic communications in interstate commerce. As such, ERC's electronic communications systems constitute an "electronic communication service" within the meaning of 18 U.S.C. § 1030(e)(2)(B).

82.     As a Quality Assurance Manager, ERC provided Frady with access to ERC's electronic communications systems.  Such access to the system was expressly limited to business purposes only as outlined in ERC's Information Security Policy.  While Frady was provided with access to certain of ERC's confidential information, Frady was not authorized to access information that was not specifically used in performing her duties, pursuant to ERC policy.

83.     ERC never authorized Frady to copy, delete, modify, download or otherwise appropriate any confidential information in the electronic communications system for her personal use or the use of another competing person, entity, or company. Such actions constituted an abuse of her authority to access ERC's electronic communications systems.

84.     On or about September 16, 23, and 30, as well as October 1 through October 3, and October 7 through 9, 2013, Frady intentionally exceeded her authorization to access ERC's electronic communications systems by misappropriating ERC's electronic communications containing information pertaining to ERC's debt collection services including, but not limited to, client specific call procedures, fee procedures, credit bureau reporting, fraud procedures for each client, state-by-state legal information regarding debt collection services, policies and procedures regarding debt collection practices, information preservation, collections systems, data backup procedures, reconciliation processes, settlement payment processes, bank wire processes, general payment processes, non-standard transaction processes, mail room processes, banking system access procedures, data protection procedures, physical safety measures, third-party vendor procedures, quality assurance procedures, and recruiting/training methods. Such action was contrary to ERC's narrow policy limiting the use and disclosure of its confidential information to business purposes only.  Therefore, Frady's actions violated the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 (a)(2)(c) and (a)(4).

85.     Frady misappropriated such information for her own personal benefit and/or the benefit of her new employer, Stellar.  Further, the misappropriated information obtained from Frady's access of ERC's electronic communications systems was subsequently forwarded to the personal e-mail account of Akley, Stellar's Chief Operating Officer.

86.     Akley then transferred this information directly to her Stellar work e-mail account for her personal benefit and the benefit of Stellar.

87.     Defendants Akley and Stellar, as alleged above, explicitly or implicitly took part in, encouraged, directed, induced, and/or benefitted from Defendant Frady's access of ERC's electronic communications systems.

88.     Frady's unauthorized access of ERC's electronic communications systems, and Akley's and Stellar's implicit or explicit cooperation therewith, was in furtherance of their intent to defraud ERC of its confidential and proprietary information.

89.     Moreover, from the documents that Defendants misappropriated from ERC, it is evident that Defendants specifically targeted ERC's high-value proprietary and confidential information.   Upon information and belief, Defendants specifically targeted this particular information for its economic and competitive value and confidential nature.   Therefore, Defendants specifically violated 18 U.S.C. § 1030(a)(4).

90.     Frady's unauthorized access and use of ERC's electronic communication systems, and Akley's and Stellar's implicit or explicit cooperation therewith, has damaged ERC in excess of $5,000.00.  The damages sustained include the time spent by ERC technicians and officers to ascertain the information that was taken, ensuring that such information was not permanently removed from ERC's databases, and taking subsequent remedial measures to prevent such a security breach from occurring in the future.

WHEREFORE, Plaintiff requests this Court to enter judgment for it against Defendants and enter an Order:

(a)     Awarding compensatory damages to ERC;

(b)     Requiring Defendants to return any information misappropriated by Defendants through the unauthorized use of ERC's electronic communications systems, or explicit or implicit cooperation therewith;

(c)     Awarding the reasonable costs and attorneys' fees incurred by ERC in bringing this action, and

(d)     Awarding such other relief as the court deems appropriate.

**COUNT VI**
**CONVERSION**
**(As to All Defendants)**

91.     ERC repeats and re-alleges each and every allegation contained in Paragraphs 13 through 41 as if fully set forth herein.

92.     ERC is the owner of its electronic communications involving information pertaining to ERC's debt collection services including, but not limited to, client specific call procedures, fee procedures, credit bureau reporting, fraud procedures for each client, state-by-state legal information regarding debt collection services, policies and procedures regarding debt collection practices, information preservation, collections systems, data backup procedures, reconciliation processes, settlement payment processes, bank wire processes, general payment processes, non-standard transaction processes, mail room processes, banking system access procedures, data protection procedures, physical safety measures, third-party vendor procedures, quality assurance procedures, and recruiting/training methods.

93.     Defendant Frady exercised dominion or authority over ERC's property by downloading ERC's property as delineated in paragraph 31.

94.     Defendants Akley and Stellar, as alleged above, explicitly or implicitly, took part in, encouraged, had knowledge of, induced, directed, and/or benefitted from Defendant Frady's

intentional removal of ERC's proprietary and confidential information from ERC's electronic communications systems.   Such participation is evidenced by Akley's transfer of ERC's information from her personal e-mail account to her Stellar work e-mail account.

95.     Defendants' exercise of dominion and control over ERC's property is inconsistent with and adverse to the rights of ERC.

96.     ERC has been damaged as a result of Defendants' actions.

WHEREFORE, Plaintiff requests this Court to enter judgment for it against Defendants and enter an Order:

(a)     Awarding compensatory damages to ERC;

(b)     Requiring Defendants to return any information, in whatever form or current state, misappropriated by Defendants;

(c)     Awarding the reasonable attorneys' fees and costs incurred by ERC in bringing this action, and

(d)     Awarding such other relief as the court deems appropriate.

## COUNT VII
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (As to All Defendants)

97.     ERC repeats and re-alleges each and every allegation contained in Paragraphs 12 through 41, and paragraphs 67 through 78 as if fully set forth herein.

98.     ERC has invested considerable time and resources in developing its confidential and proprietary information, including, but not limited to, specific call procedures, fee procedures, credit bureau reporting, fraud procedures for each client, state-by-state legal information regarding debt collection services, policies and procedures regarding debt collection practices, information preservation, collections systems, data backup procedures, reconciliation

processes, settlement payment processes, bank wire processes, general payment processes, non-standard transaction processes, mail room processes, banking system access procedures, data protection procedures, physical safety measures, third-party vendor procedures, quality assurance procedures, and recruiting/training methods.

99.     This information constitutes trade secrets under Florida law.  The information was and is secret and proprietary, ERC derives substantial economic value from its secrecy, and the information has been the subject of efforts that were more than adequate and reasonable under the circumstances to protect its secrecy.

100.     Defendants Frady's and Akley's misappropriation of ERC's trade secrets gave Defendants an unearned, unfair and unjust advantage in operating a competing business.

101.     Upon information and belief, Frady has utilized and disclosed ERC's trade secrets in furtherance of her employment with Stellar.

102.     As alleged above, Stellar explicitly or implicitly took part in, encouraged, directed, induced, had knowledge of, and/or benefitted from Frady's and Akley's misappropriation of ERC's trade secrets.   Further, Stellar knew or had reason to know that ERC's trade secrets were acquired by Defendants Frady and Akley under circumstances giving rise to Frady's duty to ERC to maintain their secrecy.

103.     The above-described acts by Defendants constitute unlawful and unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes § 501.201, *et seq.*

104.     Defendants' unfair competition with ERC has caused ERC damage, including the loss of value derived from its proprietary, confidential, and trade secret information.  Further,

ERC will suffer imminent, irreparable harm absent injunctive relief prohibiting Defendants' unfair competition with ERC.

WHEREFORE, Plaintiff requests this Court to enter judgment for it against Defendants and enter an Order:

(a)     Enjoining Defendants permanently from committing deceptive and unfair trade practices against ERC, including disclosing, using, or disseminating ERC's trade secrets and other proprietary and confidential information;

(b)     Awarding compensatory damages to ERC;

(c)     Awarding the reasonable attorneys' fees and costs incurred by ERC in bringing this action, and

(d)     Awarding such other relief as the court deems appropriate.

## COUNT VIII
## CIVIL CONSPIRACY
### (As to All Defendants)

105.    ERC repeats and realleges each and every allegation contained in Paragraphs 12 through 41, 67 through 78, and 80 through 90 as if fully set forth herein.

106.    Defendants conspired to misappropriate ERC's trade secrets and to obtain ERC's confidential and proprietary information through Frady's exceeding her authorized access to ERC's electronic communications systems.

107.    Defendant Akley directed Frady to obtain ERC's proprietary, confidential, and trade secret information on several occasions while Frady was still in the employ of ERC.  Frady subsequently forwarded ERC's information directly to Akley's personal e-mail account.  Within the course and scope of her employment, Akley then transferred this information from her

personal e-mail account to her Stellar work e-mail account, and began circulating ERC's information to other Stellar personnel.

108.    Upon information and belief, this information was subsequently used, copied, or referenced by Stellar to revise its work policies and procedures regarding, but not limited to, client specific call procedures, fee procedures, credit bureau reporting, fraud procedures for each client, state-by-state legal information regarding debt collection services, policies and procedures regarding debt collection practices, information preservation, collections systems, data backup procedures, reconciliation processes, settlement payment processes, bank wire processes, general payment processes, non-standard transaction processes, mail room processes, banking system access procedures, data protection procedures, physical safety measures, third-party vendor procedures, quality assurance procedures, and recruiting/training methods.

109.    Frady's unauthorized access and use of ERC's electronic communication systems, and Akley's and Stellar's implicit or explicit cooperation therewith, has damaged ERC in excess of $5,000.00.  The damages sustained include the time spent by ERC technicians and officers to ascertain the information that was taken, ensuring that such information was not permanently removed from ERC's databases, and taking subsequent remedial measures to prevent such a security breach from occurring in the future.

110.    ERC has been damaged by Defendants' actual and threatened misappropriation of trade secrets.  Additionally, Defendants' disclosure and/or use of ERC's trade secrets will further result in immediate and irreparable harm to ERC for which there is no adequate remedy at law.

WHEREFORE, Plaintiff requests this Court to enter judgment for it against Defendants and enter an Order:

(a)    Awarding compensatory damages to ERC;

(b)     Awarding the reasonable attorneys' fees and costs incurred by ERC in bringing

this action, and

(c)     Awarding such other relief as the court deems appropriate.

Dated:  March 31, 2014

                                        Respectfully Submitted,


                                        SMITH, GAMBRELL & RUSSELL, LLP


                                        By:  s/Patricia J. Hill
                                            Patricia J. Hill, Esquire
                                            Florida Bar No. 0091324
                                            Yash B. Dave, Esquire
                                            Florida Bar No. 0068573
                                            50 N. Laura Street, Suite 2600
                                            Jacksonville, FL  32202
                                            Telephone:(904) 598-6100
                                            Facsimile: (904) 598-6240
                                            Email:  pjhill@sgrlaw.com
                                            Email:  ydave@sgrlaw.com

                                        *Attorneys for Plaintiff Enhanced Recovery
                                        Company, LLC*

Rachel
Frady

# EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT is entered into effective as of the $\underline{11}$ day of $\underline{OCTOBER}$ , 2006, by and between ENHANCED RECOVERY CORPORATION, a Delaware corporation (the "Company"), and Rachel Frady (the "Employee").

## A.   PURPOSE AND INTENT

The Company owns and operates a national collection company headquartered in Jacksonville, Florida. The Company has hired Employee as a QC Dialer/Strategy Analyst in the Jacksonville facility and has agreed to compensate Employee based, in part, on the performance of the Employee.

## B.   DUTIES AND COMPENSATION

1.      Duties. For so long as Employee is employed by the Company, Employee shall perform such duties as may be assigned by the Company, subject to the Company's policies and procedures as may be adopted from time, whether written or not. Employee agrees to devote his/her full-time best efforts, energy and skill to the performance of his/her duties under this Agreement in a manner which will further the business and interests of the Company. Employee agrees to abide by the provisions set forth in Attachment A to this Agreement (Enhanced Recovery Corporation Rules For Professional Manager Conduct)

2.      Salary and Bonus. In exchange for the services Employee shall provide Company under this Agreement, during the term hereof, Company agrees to pay Employee a salary of $31,200 (Thirty one thousand two hundred dollars) per year, payable in bi-weekly installments. Employee may also be entitled to bonus pay as outlined under separate agreement.

3.      Other Benefits. During the Term of this Agreement, Employee shall be entitled to participate in such benefit plans as may be made available from time to time by the Company, including health insurance benefits as are made available to management level employees of the Company. Employee shall also receive reimbursement for reasonable business expenses, subject to Company reimbursement policies and as approved by the Company.

4.      Taxes. Employee acknowledges that any amounts payable under this Agreement, including salary payable under Section 2 hereof, shall be paid subject to all applicable taxes required to be withheld by Company under federal, state or local law. Employee agrees that Employee is solely responsible for all taxes imposed by reason of receipt of any amounts of compensation or benefits payable under this Agreement.

## C.   TERMINATION

1.      Termination Without Cause. Employee agrees that Company may terminate his/her employment without cause at any time.



EXHIBIT

A

2.    Termination for Cause.    Company may terminate this Agreement for cause, effective immediately upon Employee's:

(a)    death;

(b)    total disability to perform his/her normal duties for ninety (90) days or more during this Agreement;

(c)    conviction or entering a plea of guilty or *nolo contendere* to his alleged commission, as principal, accomplice or accessory, of any crime;

(d)    gross negligence, willful misconduct or refusal to substantially perform the duties assigned to Employee; or

(e)    unauthorized disclosure or threatened disclosure of any trade secret or Confidential Information (as defined below) of Company or the commission of an intentional act which constitutes a breach of Employee's noncompetition or nonsolicitation obligations to Company as set forth herein.

## D.    CONFIDENTIALITY OF INFORMATION

1.    Information.    Employee acknowledges that in his/her position with Company Employee will be exposed to and receive information relating to the confidential affairs of Company or its affiliates, including, but not limited to, business and marketing plans, client and employee lists, pricing and cost information, competitive data, financing, expansion plans, business policies and practices, and other information considered by Company or any of its affiliates to be confidential and in the nature of trade secrets (collectively, the "Confidential Information"). Employee agrees that during the term of this Agreement and for a period of one (1) year after the termination of this Agreement for any reason, Employee will keep the Confidential Information confidential, not use it for his personal benefit or the benefit of any person or entity other than Company, not disclose it to any third person or entity without the prior written consent of Company, and will not take or fail to take any action which will cause the Confidential Information to lose its confidential nature.

3.    Return of Confidential Information and Company Property.    Employee acknowledges and agrees that all files, records, data, material and customer lists used or obtained by Employee in the course of his/her employment with Company are the property of Company and will not be removed from the Company's offices in any form without the Company's consent. Employee agrees to return to the Company, on or promptly after his/her resignation or termination, all Company property or copies thereof (in whatever form) including, but not limited to, files, records, computer access codes, credit cards, computer programs, keys, card key passes, manuals, documents, business plans and other property which Employee received or prepared or helped to prepare in connection with his/her employment with Company. Furthermore, Employee

2

agrees to assign to Company all right, title and interest in such property, and any other inventions, discoveries or works of authorship that Employee creates within the scope and during the course of his/her employment.

## E.   NONSOLICITATION

1. <u>Nonsolicitation</u>. Employee recognizes and acknowledges that Company has a substantial and legitimate business interest in protecting its investment in its employees and in Employee. Therefore, Employee agrees that during the term of this Agreement and for a period of one (1) year after the termination of this Agreement for any reason, Employee shall refrain from and will not directly or indirectly, as an independent contractor, employee, consultant, agent, partner, joint venturer, or otherwise, solicit any of the employees of Company or its affiliates to terminate their employment.

2. <u>Specific Enforcement</u>. Employee further consents to the issuance of a temporary restraining order, or preliminary, temporary or permanent injunction by any court of competent jurisdiction to prohibit the breach of any provision of this Agreement or to maintain the status quo pending the outcome of legal proceedings which may be initiated and waive any requirement for the posting of a bond as a condition to the entry of such an injunction.

## F.   SURVIVAL OF AND REMEDIES UNDER RESTRICTIVE COVENANTS

1. <u>Survival</u>. Employee agrees that the provisions of Section E of this Agreement, and any other provision that by its terms or meaning is intended to survive, shall survive any termination of this Agreement.

2. <u>Remedies</u>. Employees agree that any breach of the confidential information or nonsolicitation provisions of Sections D and E of this Agreement shall be enforceable by the remedy of specific performance, in addition to any other remedies to which Company may be entitled at law or in equity. Employee further consents to the issuance of a temporary restraining order, or preliminary, temporary or permanent injunction by any court of competent jurisdiction to prohibit the breach of any provision of this Agreement or to maintain the status quo pending the outcome of legal or arbitration proceedings which may be initiated, without Company having to prove damages or post any bond.

3. <u>Independent Consideration</u>. Employee agrees that the existence of any claim or cause of action by Employee against Company whether predicated on this Agreement or otherwise, shall not be a defense to the enforcement by Company of the confidentiality obligations or the covenants not to solicit contained in this Agreement. Employee acknowledges that the restrictions of Sections D and E of this Agreement have been separately bargained for by Company in exchange for good and valuable consideration, the receipt and sufficiency of which Employee hereby acknowledges.

3

## G.   MISCELLANEOUS

1.   This Agreement shall be construed, and the validity, performance and enforcement thereof shall be governed, by the laws of the State of Florida.

2.   If any provision of this Agreement shall, for any reason, be adjudged by any court of competent jurisdiction to be invalid or unenforceable, such judgment shall not affect, impair or invalidate the remainder of this Agreement but shall be confined in its operation to the provision of this Agreement directly involved in the controversy in which such judgment shall have been rendered.

3.   Employee agrees to pay all costs and fees, including attorneys' fees and expenses, incurred by Company in connection with the enforcement of the terms of this Agreement.

4.   Employee understands that Company may at various times decide not to enforce all or part of this Agreement or similar agreements with other Company employees. Employee agrees that such instances of non-enforcement shall not constitute a waiver, and will not prevent Company from enforcing any or all of the remaining portions of this Agreement against Employee.

5.   Employee agrees to abide by and comply with Company's internal policies and procedures and state and federal laws to which Company and/or Employee may be subject.

6.   This Agreement represents Employee's entire understanding with Company with regard to his/her employment and may be changed only by a written agreement signed by an authorized representative of Company and Employee.

I HAVE READ THIS AGREEMENT AND HAVE HAD AN OPPORTUNITY TO ASK COMPANY REPRESENTATIVES QUESTIONS ABOUT THIS AGREEMENT. I HAVE HAD AN OPPORTUNITY AND HAVE BEEN ENCOURAGED BY COMPANY TO CONSULT WITH AN ATTORNEY OF MY CHOICE (AT MY OWN EXPENSE) PRIOR TO SIGNING THIS CONTRACT, AND I UNDERSTAND THAT MY SIGNING THIS AGREEMENT IS A CONDITION OF EMPLOYMENT WITH COMPANY.

*SIGNATURES APPEAR ON THE FOLLOWING PAGE*

4

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Employment Agreement as of the day and year first above written.

EMPLOYEE:

Rachel Frady

ENHANCED RECOVERY CORPORATION

By: _____
Its Authorized Officer

5

## ATTACHMENT A

## ENHANCED RECOVERY CORPORATION RULES FOR PROFESSIONAL MANAGER CONDUCT

The following acts are prohibited by all Enhanced Recovery Corporation Management Personnel, and may be grounds for immediate removal from your position:

- Failing to protect the best interests of the company in all that you do

- Unauthorized Absenteeism

- Unauthorized Tardiness

- Rude or unprofessional behavior

- Cursing or Swearing on the collection floor

- Any false of misleading practices including lying, fabricating, misrepresenting or withholding the truth in all business related matters

- Insubordination

- Alcohol Abuse

- Substance Abuse

- Defamation of the company on or off of company premises

- Defamation of company employees on or off of company premises

- Socializing with subordinates after work hours

- Fraternization with subordinates after work hours

- Offering rides to other employees

- Accepting rides from other employees

- Borrowing money from any employee for any reason

- Lending money to any employee for any reason

- Sharing of alarm codes, building keys, swipe badges or system logins

6

- Removal of company property from company premises
- Referral of employees away from Enhanced Recovery Corporation
- Solicitation of employees from other companies during business hours