UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ENHANCED RECOVERY COMPANY,
LLC, a Delaware limited liability company,

        Plaintiff,

v.                           CASE NO. 3:13-cv-1262-J-34JBT

RACHEL FRADY, a Florida resident,
LIZA AKLEY, a Florida resident, and STELLAR
RECOVERY, INC., a Florida Corporation,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**[1]

    **THIS CAUSE** is before the Court on Defendant Frady's Motion to Dismiss

Plaintiff's Third Amended Complaint and for the Court to Decline Supplemental

Jurisdiction on Any Remaining State Law Claims ("Frady Motion") (Doc. 58),

Plaintiff's Response thereto (Doc. 61), Defendants Stellar and Akley Joint Motion to

Dismiss Plaintiff's Third Amended Complaint and for the Court to Decline

Supplemental Jurisdiction on Any Remaining State Law Claims ("Stellar and Akley

Motion") (Doc. 66), and Plaintiff's Response thereto (Doc. 67) (collectively, "Motions"

and "Responses").  The Motions were referred to the undersigned for a report and

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a).  "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).

recommendation regarding an appropriate resolution.  (Doc. 83.)  The Stellar and Akley Motion adopts and addresses several arguments made in the Frady Motion. Thus, the undersigned will address both Motions together.

## I.    Summary of Recommendation

For the reasons set forth herein, the undersigned **RECOMMENDS** that the Motions be **GRANTED in part** as to Counts II, III, VI, VII, and VIII **without prejudice**, and **DENIED** as to the remainder.

First, the undersigned recommends that Plaintiff's Third Amended Complaint for Injunctive Relief and Damages ("TAC") (Doc. 55) sufficiently alleges that Defendant Rachel Frady ("Frady") exceeded authorized access under the Computer Fraud and Abuse Act ("CFAA"), in that it plausibly alleges that Frady's access was for non-business purposes against ERC policy.  *See United States v. Rodriguez*, 628 F.3d 1258 (11th Cir. 2010).  The undersigned also recommends that Plaintiff sufficiently alleges loss under the CFAA.  Further, the undersigned recommends that Plaintiff sufficiently alleges liability under the CFAA against Defendants Liza Akley ("Akley") and Stellar Recovery, Inc. ("Stellar").

Next, the undersigned recommends that Count III of the TAC, alleging violations of the Stored Communications Act ("SCA"), be dismissed without prejudice because it does not sufficiently allege that Frady accessed a "facility through which an electronic communication service is provided."  *See* 18 U.S.C. § 2701(a)(1).

The undersigned also recommends that the Florida law claims contained in

Counts II (Breach of Duty of Loyalty), VI (Conversion), VII (Violation of Florida Deceptive and Unfair Trade Practices Act "FDUTPA"), and VIII (Civil Conspiracy), as currently pled, are preempted by the Florida Uniform Trade Secrets Act ("FUTSA").  *See* Fla. Stat. § 688.008.  Thus, the undersigned recommends these counts be dismissed without prejudice as well.

Finally, the undersigned recommends that Plaintiff sufficiently alleges Counts I ("Breach of Contract") and IV ("Misappropriation of Trade Secrets"), and that Plaintiff has sufficiently alleged Akley and Stellar's liability for misappropriation of trade secrets.

## II.    Background

The TAC alleges that Plaintiff Enhanced Recovery Company, LLC ("ERC") provides "third party debt collection services to customers on a nationwide basis from its offices in Florida."  (Doc. 55 ¶ 11.)  ERC develops and maintains its customer relations by specifically tailoring its debt collection services to the needs of each client.  (*Id.* ¶ 12.) ERC has developed "confidential information or knowledge relating to its business and clients." (*Id.* ¶ 13.) ERC limits access to this confidential information to particular ERC employees (*id.* ¶ 15), and the employees are instructed not to access the information for non-business purposes or show the information to anyone outside of ERC (*id.* ¶ 16).  ERC's Information Security Policy provides that "[n]o employee shall disclose any [policies, procedures, files or manuals] to a third party while they are employed, or thereafter."  (*Id.* ¶ 26.)

3

Frady was hired by ERC on or about January 3, 2005.  (*Id.* ¶ 17.)  She was subsequently promoted several times.  (*Id.*)  In consideration for her promotion to QC Dialer/Strategy Analyst in 2006, Frady entered into an agreement with ERC that contained non-solicitation and confidentiality provisions and a provision requiring that ERC documents and property be returned upon termination or resignation.  (*Id.* ¶ 19.)  Stellar is "a direct competitor of ERC that engages in the business of providing third party debt collection services within the same geographic scope [as Plaintiff]."  (*Id.* ¶ 4.)

Plaintiff alleges that while Frady was employed by ERC, she accessed ERC's information located on its servers (*id.* ¶ 63), and forwarded this confidential, proprietary, and trade secret information from her ERC work e-mail account to her personal e-mail account (*id.* ¶ 1).  Frady then forwarded this information from her personal e-mail account to Akley, the Chief Operating Officer ("COO") of Stellar.  (*Id.*)  Akley sent this information to her work e-mail account and to other Stellar employees, knowing that it was confidential, proprietary, and trade secret information.  (*Id.*)  Plaintiff alleges that, on information and belief, Akley and Stellar "solicited, directed, induced, or encouraged Frady to misappropriate ERC's information to the detriment of ERC and are accepting the benefits of that misappropriation."  (*Id.*)

In the eight-count TAC, Plaintiff sues all three Defendants for violations of the CFAA and FDUTPA, and for conversion, misappropriation of trade secrets, and civil

conspiracy.  (*Id.*)  Plaintiff also sues Frady alone for breach of her employment agreement, breach of her duty of loyalty, and violations of the SCA.  (*Id.*)

### III.   Standard

To survive a motion to dismiss, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Plausibility means "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."   *Id.* (internal quotation marks omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  The court is "not bound to accept as true a legal conclusion couched as a factual allegation."   *Id.* at 678.  "[B]are assertions" that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim "are conclusory and not entitled to be assumed true."  *Id.* at 681.

## IV.    Analysis

Defendants argue that ERC cannot state a cause of action under the CFAA

or the SCA, which are the only federal claims.  (Doc. 58 at 1–2, 5–19; Doc. 66 at

4–7.)  Therefore, the Court should dismiss these claims and decline supplemental

jurisdiction over the remaining state law claims.  (Doc. 58 at 4, 24.)  Defendants

further argue that one of the state law claims, statutory misappropriation of trade

secrets, preempts all of the other state law claims.  (*Id.* at 5, 19–21; Doc. 66 at

14–16.)   Defendants also argue that Count I (Breach of Contract), Count IV

(Misappropriation of Trade Secrets), and Count VII (Violation of FDUTPA) fail to

state a cause of action.  (Doc. 58 at 21–24.)

In addition, Stellar and Akley argue that the CFAA does not provide for

vicarious or indirect liability (Doc. 66 at 8–10), that Plaintiff has not sufficiently

alleged either a direct or agency theory of liability against Stellar and Akley (*id.* at

10–12), that misappropriation of trade secrets does not allow for vicarious liability (*id.*

at 12–14), that Plaintiff has not sufficiently alleged either a direct or agency theory

of liability for misappropriation of trade secrets (*id.*), and that Count VIII (Civil

Conspiracy) fails to state a claim (*id.* at 17).

### A.    The Computer Fraud and Abuse Act ("CFAA")

Generally, the CFAA is a criminal statute, but it also provides for a civil cause

of action in favor of "[a]ny person who suffers damage or loss by reason of a

[statutory] violation."  18 U.S.C. § 1030(g).  A civil action may be brought only if the

conduct involves certain factors set forth in the CFAA, including "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value."  18 U.S.C. § 1030(c)(4)(A)(i)(I), (g).

Plaintiff alleges that Frady violated 18 U.S.C. § 1030(a)(2)(C), which provides for liability against one who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer," and 18 U.S.C. § 1030(a)(4), which applies when one "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value . . . ."  (Doc. 55 ¶ 84.)  Plaintiff also alleges that Stellar and Akley violated 18 U.S.C. § 1030(a)(4).  (*Id.* ¶ 89.)

Defendants argue that Plaintiff has not sufficiently alleged that Frady accessed Plaintiff's computers without authorization and has not sufficiently alleged damages. Defendants also argue that the CFAA does not allow for vicarious or indirect liability and that Plaintiff has not sufficiently alleged whether it is pursuing a direct or agency theory of liability.

### 1.   Plaintiff Sufficiently Alleges That Frady Exceeded Authorized Access

Defendants argue that Plaintiff cannot state a claim under the CFAA because Plaintiff granted Frady access to its computers, including the subject allegedly confidential information, and thus Frady did not access any computers without

7

authorization or exceed authorized access.  (Doc. 58 at 5–14; Doc. 66 at 4–7.)

Under the CFAA, "exceeds authorized access" means "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter."  18 U.S.C. § 1030(e)(6).  There is a split of authority regarding what this definition means.  Some circuits have held that exceeding authorized access occurs only when an individual "obtains or alters information on a computer beyond that which he is authorized to access."  *WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d 199, 206 (4th Cir. 2012); *see also LVRC Holdings LLC v. Brekka,* 581 F.3d 1127, 1133 (9th Cir. 2009).  Other circuits have adopted a broader view, holding that exceeding authorized access may also occur when an individual exceeds "the purposes for which access is 'authorized.'"  *United States v. John*, 597 F.3d 263, 272 (5th Cir. 2010); *see also EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 583–84 (1st Cir. 2001).  In *United States v. Rodriguez*, 628 F.3d 1258 (11th Cir. 2010), the Eleventh Circuit appears to have adopted the broader view, at least on the facts before it, holding that a Social Security Administration ("SSA") employee who was authorized to access certain information as part of his duties but did so for non-business reasons, in contravention of SSA policy, exceeded his authorized access under the CFAA.

In a similar case to the one at bar, involving a civil dispute between a private employer and an employee, the court in *Aquent LLC v. Stapleton* interpreted *Rodriguez* as follows:

8

> In 2010, the Eleventh Circuit joined circuits that take a broader view, holding that when the employer had a policy limiting an employee's computer access to that done for business purposes, an employee who accessed a database for an improper purpose exceeded authorized access.

Case No. 6:13-cv-1889, 2014 WL 5780293, at *4 (M.D. Fla. Nov. 5, 2014).

The *Aquent* court held that, under the *Rodriguez* holding, the plaintiff adequately alleged that the defendant "exceeded her authorization" where it alleged that the defendant violated an offer letter from the plaintiff stating that the defendant was required to keep information confidential during and after her employment and could use such information only within the scope of her duties to the company. *Id.* The undersigned recommends that the Court adopt the reasoning of *Aquent*, particularly at the pleading stage.

At least one district court, however, has taken a narrower view of *Rodriguez* and has persuasively held that an employer cannot state a claim under the CFAA against employees who enjoy "full access to all of its confidential information and trade secrets" but who allegedly misuse it in violation of nondisclosure agreements or company policy. *Power Equip. Maint., Inc. v. AIRCO Power Servs., Inc.*, 953 F. Supp. 2d 1290, 1298 (S.D. Ga. 2013). In *AIRCO*, the court reasoned:

> In this Court's opinion, the language of the CFAA does not speak to employees who properly accessed information, but subsequently used it to the detriment of their employers: either one has been granted access or has not. Employers cannot use the CFAA to grant access to information and then sue an employee who uses that

9

information in a manner undesired by the employer.

*Id.* at 1296.

The *AIRCO* court also stated: "[t]he language of the CFAA simply prohibits accessing information either without authorization or in excess of authorized access. It does not confer upon employers the ability to sue their employees in federal court for violations of company policy regarding computer usage." *Id.* (internal citation omitted). *AIRCO* distinguishes *Rodriguez* as presenting a completely different set of facts because the defendant there was being criminally prosecuted under the CFAA and because the SSA maintained a well-advertised policy allowing access to the information at issue only for specific purposes.

The undersigned agrees with the concerns expressed or implied in *AIRCO* and similar cases that the Eleventh Circuit, particularly in a criminal case involving the SSA, could not have intended in a civil context to federalize private disputes that typically result in state law claims, and that it may not have foreseen this result. Nevertheless, the undersigned finds nothing in the language of the statute, or of *Rodriguez*, to distinguish that case from this case, at least at the pleading stage. It appears any further clarification should come from the Eleventh Circuit. Therefore, the undersigned recommends that, at least at the pleading stage, the Court not adopt the reasoning of *AIRCO*.

Defendants also rely on cases that are readily distinguishable from the case at bar. For example, in *Lee v. PMSI, Inc.*, Case No. 8:10-cv-2904-T-23TBM, 2011

10

WL 1742028 (M.D. Fla. May 6, 2011), the subject employee only visited websites such as Facebook and sent personal e-mails at work against company policy.  When discussing *Rodriguez*, the court stated "[t]he Eleventh Circuit upheld [Rodriguez's] conviction . . . because Rodriguez accessed the sensitive personal information on the government computers.  In this instance, Lee did not improperly access any information on PMSI's computer, and the only information she accessed was her own information on her email and facebook accounts."  *Lee*, 2011 WL 1742028, at *2.  Thus, *Lee* is readily distinguishable from this case.[2]

Therefore, the undersigned recommends that Plaintiff has sufficiently alleged that Frady exceeded authorized access under the CFAA.

## 2.     Plaintiff Sufficiently Alleges That It Suffered a Loss of $5,000 or More

Defendants argue that Plaintiff has not sufficiently alleged loss under the CFAA.  (Doc. 58 at 18–19.)  The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential

---

[2] Defendants also cite *Clarity Services, Inc. v. Barney*, 698 F. Supp. 2d 1309 (M.D. Fla. 2010), which pre-dates the *Rodriguez* holding, and *Trademotion, LLC v. Marketcliq, Inc.*, 857 F. Supp. 2d 1285 (M.D. Fla. 2012), which does not address *Rodriguez*. Defendants also cite *Keen v. Bovie Medical Corp.*, Case No. 8:12-cv-305-T-24-EAJ, 2013 WL 1899791 (M.D. Fla. May 7, 2013).  However, *Keen* addresses 18 U.S.C. § 1030(a)(5), which only provides liability for a person who accesses a protected computer "without authorization" and does not mention exceeding authorized access.

damages incurred because of interruption of service."[3]  18 U.S.C. § 1030(e)(11).

Plaintiff alleges that Defendants' actions have "damaged ERC in excess of $5,000.00.  The damages sustained include the time spent by ERC technicians and officers to ascertain the information that was taken, ensuring that such information was not permanently removed from ERC's databases, and taking subsequent remedial measures to prevent such a security breach from occurring in the future." (Doc. 55 ¶ 90.)[4]

Defendants argue that Plaintiff's assertion of damages is a "formulaic recitation and conclusion" and does not allege the necessary "dollars and cents." (Doc. 58 at 19.)  In support, Defendants cite to *Morgan v. Preston*, Case No. 3:13-00403, 2013 WL 5963563 (M.D. Tenn. Nov. 7, 2013).  However, in *Morgan*, the plaintiff merely alleged that the "defendant's alleged actions caused him a 'loss during a one year period of at least Five Thousand Dollars ($5,000).'" *Id.* at *4.  In contrast, Plaintiff here has alleged facts supporting its claim of loss.

This issue was also addressed in *Aquent*, in which the court held that the plaintiff's allegation that it "suffered losses in excess of $5,000.00 in a one-year

---

[3] Defendants briefly mention that there is a "difference of opinion between the Middle and Southern Districts of Florida as to whether interruption of service is a required damage" (Doc. 58 at 19), but do not argue that interruption of service is required.  Thus, the undersigned will not address this issue.

[4] Plaintiff does not allege that this loss occurred during a 1-year period.  But, as the events in question allegedly occurred in September and October of 2013 (Doc. 55 ¶ 84), and the TAC was filed less than a year later on April 23, 2014, it follows that the loss did occur during a 1-year period.

period, including, without limitation, the costs of engaging a computer forensics firm to respond to Stapleton's offenses and to analyze and assess the extent of Stapleton's wrongful taking of information from Aquent's computers, as well as her attempts to delete any trail of her misconduct" was sufficient to allege loss under the CFAA. 2014 WL 5780293, at *3. Plaintiff makes similar allegations here.

Thus, the undersigned recommends that Plaintiff has sufficiently alleged loss under the CFAA.

### 3.    Stellar and Akley's Liability Under the CFAA

Stellar argues that Plaintiff does not allege sufficient facts to determine whether it is potentially liable directly or vicariously. (Doc. 66 at 10–12.) However, Plaintiff pleads plausible facts to support either direct or vicarious liability against Stellar. Plaintiff alleges that Akley is the COO of Stellar. (Doc. 55 ¶ 29.) The TAC also states that "Akley then transferred this information directly to her Stellar work e-mail account for her personal benefit *and the benefit of Stellar*" (*id.* ¶ 86) (emphasis added), and that "Akley . . . explicitly or implicitly took part in, encouraged, directed, induced, and/or benefitted from Defendant Frady's access of ERC's electronic communications systems" (*id.* ¶ 87).

Defendants also argue that, at any rate, the CFAA does not provide for any kind of indirect liability. (Doc. 66 at 8–10.) Defendants contend that because Plaintiff alleges that Stellar and Akley only received documents and did not access any computers, they cannot be liable under the CFAA.

There appears to be some support for Defendants' argument, at least in dicta. The *AIRCO* court stated "[c]learly, the CFAA requires that the individual actually access the information, not merely receive it from a third party." 953 F. Supp. 2d at 1297. However, several cases have held that defendants in similar circumstances to those involving Stellar and Akley can be liable under the CFAA. *Binary Semantics Ltd. v. Minitab, Inc.*, Case No. 4:07-CV-1750, 2008 WL 763575, at *5 (M.D. Pa. Mar. 20, 2008) ("[T]he complaint sufficiently alleges that defendant Asha was acting at the direction of Minitab when she allegedly accessed plaintiff's protected computer and stole plaintiff's trade secrets. Therefore, we conclude that Minitab may be held liable for the CFAA violation."); *Se. Mech. Servs. v. Brody*, Case No. 8:08-cv-1151-T-30EAJ, 2008 WL 4613046, at *14 (M.D. Fla. Oct. 15, 2008) ("Where a new employer seeks a competitive edge through the wrongful use of information from the former employer's computer system, plaintiff will likely win on the merits of a CFAA claim."). *See also Charles Schwab & Co., Inc. v. Carter*, Case No. 04 C 7071, 2005 WL 2369815, at *7 (N.D. Ill. Sept. 27, 2005). The undersigned recommends that the reasoning of these cases be followed.

The cases Defendants rely on do not support their position and/or are distinguishable. *See Daniel v. West Asset Mgmt., Inc.*, Case No. 12-12851, 2012 WL 5379116 (E.D. Mich. Oct. 31, 2012) (holding that the plaintiff failed to state a claim under the CFAA because the defendant collection agency obtained permission from the consumer reporting agency to view the plaintiff's credit report, and so there

14

was no unauthorized access by the defendant); *Doe v. Dartmouth-Hitchcock Med. Ctr.*, Case No. CIV- 00-100-M, 2001 WL 873063 (D.N.H. July 19, 2001) (holding that the defendant was not liable under the CFAA when it not only did not access the subject information without authority, but was itself victimized by the access).[5]

Thus, the undersigned recommends that the TAC sufficiently alleges plausible liability on the part of Stellar and Akley.

## B.      The Stored Communications Act ("SCA")

The SCA is also in the criminal statutes but provides a civil cause of action. *See* 18 U.S.C. § 2707(a).  Under the SCA, certain aggrieved parties can bring an action against a defendant who "intentionally accesses without authorization" or "intentionally exceeds an authorization to access" a "facility through which an electronic communication service is provided" and "thereby obtains . . . access to a wire or electronic communication while it is in electronic storage in such system." 18 U.S.C. §§ 2701(a), 2707(a).  Frady argues that Plaintiff cannot allege an SCA violation because Plaintiff does not provide an "electronic communications service" (Doc. 58 at 14–18) and because the TAC does not sufficiently allege that Frady exceeded an authorization to access (*id.* at 5, 9).

---

[5] Defendants do not provide authority for the proposition that Plaintiff must specify or choose whether Akley is liable just for her own actions, for Frady's actions as the agent of Akley, or both.  Thus, the undersigned recommends that this argument be rejected as well.

### 1.    Plaintiff Does Not Sufficiently Allege That ERC is an Electronic Communication Service Provider

Frady first argues that Plaintiff cannot allege a violation of the SCA because Plaintiff does not provide an "electronic communication service" and thus Frady did not access a "facility through which an electronic communication service is provided."[6]   (Doc. 58 at 14–18.)   Plaintiff argues that because it provides e-mail services to its employees, it is an electronic communication service provider.

Although there is persuasive case law in support of Plaintiff's argument that proprietary e-mail providers are "electronic communication service providers" under the SCA, Plaintiff does not clearly allege that it provides an e-mail service, as it merely makes brief references to its e-mail service in the TAC.

For example, in *Vista Marketing, LLC v. Burkett*, the court held that a company's e-mail system "[c]learly" fell within the definition of an "electronic communication service," and thus a defendant who had accessed another's company e-mails had accessed a facility through which an electronic communication service was provided. Case No. 8:12-cv-1640-T-30TBM, 2014 WL 3887729, at *3 (M.D. Fla. Aug. 7, 2014). *See also Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 115 (3d Cir. 2004) (holding that a search of an e-mail stored on company's system, which the company administered, fell within an exception provided in 18 U.S.C. §

---

[6] "'[E]lectronic communication service' means any service which provides to users thereof the ability to send or receive wire or electronic communications."  18 U.S.C. § 2510(15).

2701(c)(1) for seizures of e-mail authorized "by the person or entity providing a wire or electronic communications service").

In its Response to the Frady Motion, Plaintiff states that it "provides access to its stored information and proprietary e-mail service to employees through its internal servers" (Doc. 61 at 13–14), and that its servers "network ERC's computers, provide access to its confidential information, and provide internal e-mail service to its employees" (*id.* at 14–15). However, the TAC does not include such allegations, as it includes only brief mentions of Plaintiff's e-mail service. (*See* Doc. 55 ¶ 1 ("Frady forwarded . . . information from her ERC work e-mail account . . ."); ¶ 25 ("the Policy regarding the use of the internet and ERC's e-mail service"); ¶ 31 ("from her ERC-issued e-mail account"). Nor does Plaintiff allege any other facts that would indicate it provides electronic communication services. Plaintiff merely alleges that its "electronic communication systems were routinely involved in sending and receiving electronic communications in interstate commerce" and thus constitute an electronic communication service under the SCA. (*Id.* ¶ 60.)

The allegations of the TAC do not allow the undersigned to determine the nature of Plaintiff's e-mail service and whether Plaintiff is in fact the provider of such service or merely an end user. Furthermore, even if Plaintiff does provide its own e-mail service, Plaintiff's allegations do not make clear that operating an e-mail service would bring everything on its servers within the protection of the SCA. In *Vista* and *Fraser*, the relevant "electronic communications" accessed were e-mails.

17

2014 WL 3887729, at *3; 352 F.3d 107, 114–15.  Here, Plaintiff merely alleges that the subject information was located on its electronic servers, without indicating any relationship between such servers and its e-mail system.  (Doc. 55 ¶ 63.)  Thus, Plaintiff has not sufficiently alleged that Frady accessed a "facility through which an electronic communication service is provided" and "obtain[ed] . . . access to a wire or electronic communication while it is in electronic storage *in such system*."  18 U.S.C. § 2701(a) (emphasis added).

Since it may be possible for Plaintiff to amend the complaint to state a claim, the undersigned recommends that the Court grant Plaintiff leave to do so.

### 2.    Plaintiff Sufficiently Alleges That Frady Exceeded an Authorization to Access

Frady also argues that Plaintiff cannot state a claim under the SCA because Frady was provided access to the subject computer and thus did not exceed an authorization to access.  (Doc. 58 at 5, 9.)  However, the undersigned has already recommended that Frady did exceed authorized access under the CFAA, and recommends the same as to the SCA.  Frady offers no persuasive reason to treat the two acts differently in this respect.

### C.    State Claims

### 1.    Preemption by the Florida Uniform Trade Secrets Act ("FUTSA")

Defendants argue that, pursuant to Fla. Stat. § 688.008, Plaintiff's state law claims for breach of contract, breach of duty of loyalty, conversion, violation of

18

FDUTPA, and civil conspiracy are preempted by Plaintiff's claim for misappropriation of trade secrets.  (Doc. 58 at 19–21; Doc. 66 at 14–16.)  Florida Statute Section 688.008(1) provides that, except as provided in subsection (2), the provisions of FUTSA "displace conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret."  Subsection (2) provides that FUTSA does not affect "(a) Contractual remedies, whether or not based upon misappropriation of a trade secret; (b) Other civil remedies that are not based upon misappropriation of a trade secret; . . . ."[7]

The interpretation of FUTSA is a question of Florida law.  Thus, the Court is required to construe it "as would the Supreme Court of Florida."  *Royal Health Care Servs., Inc. v. Jefferson-Pilot Life Ins. Co.*, 924 F.2d 215, 216 (11th Cir. 1991).  The parties have not provided, nor has the undersigned found, any Florida Supreme Court decision construing section 688.008.  There is also very little case law from the Florida District Courts of Appeal addressing this provision of FUTSA.  *All Pro Sports Camp, Inc. v. Walt Disney Co.* refers to Fla. Stat. § 688.008, but does not offer any guidance regarding its meaning.  727 So. 2d 363, 367 (Fla. Dist. Ct. App. 1999).  Even though FUTSA provides that it should be interpreted uniformly among the states, Fla. Stat. § 688.009, Florida law is still uncertain in this area.

---

[7] Accordingly, Plaintiff's breach of contract claim is not affected.  *See also Mortg. Now, Inc. v. Stone*, Case No. 3:09cv80/MCR/MD, 2009 WL 4262877, at *8 (N.D. Fla. Nov. 24, 2009).

The language of the statute precludes claims based on the misappropriation of trade secrets.[8]  In determining whether claims are preempted, district courts have "consider[ed] whether Plaintiff's allegations of [other claims] are distinguishable from the allegations of trade secret misappropriation."  *Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp. 2d 1329, 1336 (S.D. Fla. 2002).  As Plaintiff notes, at least one court has found that, where a plaintiff alleged that the defendant "misappropriated and converted to his own use the confidential and proprietary information of plaintiff" and also alleged that "a large number of misappropriated documents, 'some of which may be additional misappropriated trade secrets of plaintiff or confidential and proprietary information of plaintiff'" remained in the defendant's possession, the language of the complaint was broad enough to find that the count was not based on trade secrets alone.  *K.F. Jacobsen & Co. v. Gaylor*, 947 F. Supp. 2d 1120, 1127 (D. Or. 2013).[9]  However, the language of the TAC is not as broad.

The undersigned recommends that, as currently pled, all of Plaintiff's state law claims are based, in whole or at least in large part, on the misappropriation of trade secrets.  In alleging Frady's breach of duty of loyalty, Plaintiff states "Frady's conduct constitutes willful and malicious misappropriation pursuant to Florida's Uniform

---

[8] In general, the courts have not focused on the language that only "conflicting" laws are displaced.  *See, e.g.*, *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1180 (M.D. Fla. 2005).  Plaintiff has not cited any cases that focus on this language.

[9] This case interprets a similar provision in the Oregon Trade Secrets Act.

Trade Secret Act, § 688.004." (Doc. 55 ¶ 58). When alleging conversion, Plaintiff incorporates by reference a paragraph stating "[t]his information is of significant value to ERC and constitutes trade secrets pursuant to Florida law." (*Id.* ¶ 38.) Plaintiff's FDUTPA count states "Defendants Frady's and Akley's misappropriation of ERC's trade secrets gave Defendants an unearned, unfair, and unjust advantage in operating a competing business." (*Id.* ¶ 100.) The civil conspiracy count states that "Defendants conspired to misappropriate ERC's trade secrets and to obtain ERC's confidential and proprietary information through Frady's exceeding her authorized access to ERC's electronic communications systems" (*id.* ¶ 106), and also incorporates by reference Paragraph 38, which alleges that the information constitutes trade secrets.

Therefore, the undersigned recommends that, as currently pled, the non-contract state law counts, i.e., Counts II, VI, VII, and VIII, are preempted by FUTSA. However, because Plaintiff may be able to re-plead some or all of these counts so that they "are not based upon misappropriation of a trade secret," Fla. Stat. § 688.008(2)(b), the undersigned recommends that Plaintiff be allowed to do so.

## 2.    Breach of Contract

Frady argues that Plaintiff fails to state a cause of action for breach of contract because Plaintiff does not allege how Frady is "using or disclosing trade secrets and confidential business information." (Doc. 58 at 21.) Defendants cite *American Registry, LLC v. Hanaw*, Case No. 2:13-cv-352-FtM-29UAM, 2013 WL 6332971, at

*2 (M.D. Fla. Dec. 5, 2013), in which a breach of contract claim was dismissed because the plaintiff did not "provide any factual content that allows the Court to reasonably infer that [the defendant] is using confidential information to act as a competitor."

However, the undersigned recommends that Plaintiff sufficiently alleges how Frady is using or disclosing trade secrets and confidential business information.  The TAC states that  "Frady forwarded ERC's information directly to Akley's personal e-mail account."  (Doc. 55 ¶ 32.)  Moreover, Plaintiff also alleges that Frady breached the contract by failing to return the property upon her resignation, so its breach of contract claim does not rest on whether it sufficiently pled that Frady is "using or disclosing trade secrets and confidential business information."  (*Id.* ¶ 45.)

Frady also argues that Plaintiff fails to allege damages.  (Doc. 58 at 21–22.)  However, the TAC alleges that "ERC has been damaged, has lost the exclusive use of its confidential information, and faces irreparable injury.   Moreover, ERC is threatened with the future loss of employees, clients, and income in an amount which may be impossible to determine."[10]   (Doc. 55 ¶ 47.)   The undersigned recommends that Plaintiff has plausibly alleged a valid contract, a material breach, and damages.

---

[10] Plaintiff also states in its Response to the Frady Motion that "Defendant implicitly agreed in her employment agreement that any breach of the Confidentiality provision would damage ERC by waiving any requirement that ERC prove damages in the event of such breach."  (Doc. 61 at 19.)

22

### 3.     Misappropriation of Trade Secrets

Defendants argue that Plaintiff fails to state a cause of action for misappropriation of trade secrets (Doc. 58 at 22) and that FUTSA does not allow for vicarious liability (Doc. 66 at 12–14).

### a.     Description of Trade Secrets

Plaintiff alleges that Frady downloaded and disclosed to third parties information including, but not limited to:

> specific call procedures, fee procedures, credit bureau reporting, fraud procedures for each client, state-by-state legal information regarding debt collection services, policies and procedures regarding debt collection practices, information preservation, collections systems, data backup procedures, reconciliation processes, settlement payment processes, bank wire processes, general payment processes, non-standard transaction processes, mail room processes, banking system access procedures, data protection procedures, physical safety measures, third-party vendor procedures, quality assurance procedures, and recruiting/training methods.

(Doc. 55 ¶ 68.) Plaintiff alleges that this information constitutes trade secrets under Florida law because it "is secret and proprietary, [Plaintiff] derives substantial economic value from its secrecy, and the information has been the subject of efforts that were more than adequate and reasonable under the circumstances to protect its secrecy." (*Id.* ¶ 69; *see also id.* ¶¶ 14–15.)[11]

---

[11] "'Trade secret' means information, including a formula, pattern, compilation, program, device, method, technique, or process that: (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily

(continued...)

23

Defendants argue that the foregoing description of the documents misappropriated as trade secrets "is so broad as to be meaningless."[12] (Doc. 58 at 22.) According to Defendants, Plaintiff must allege which documents it contends are trade secrets and which may be merely confidential. (*Id.*) However, there is no such requirement.   "[A] party proceeding under FUTSA need only describe the misappropriated trade secrets with reasonable particularity.  Moreover, whether a particular type of information constitutes a trade secret is a question of fact." *Treco Int'l S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1286 (S.D. Fla. 2010) (quotations and citations omitted).

The undersigned recommends that Plaintiff has sufficiently described the misappropriated trade secrets.

### b.    Vicarious Liability

Defendants argue that, with regard to misappropriation of trade secrets, Plaintiff must allege whether it is pursuing a theory of vicarious or direct liability, and further that Plaintiff has not sufficiently alleged either theory.  (Doc. 66 at 12–14.) However, Defendants offer no persuasive authority indicating that Plaintiff needs to

---

[11](...continued)
ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Fla. Stat. § 688.002(4).

[12] Defendants quote *American Registry*, 2013 WL 6332971, at *4.  In that case, however, the plaintiff's description of trade secrets was "nearly identical to the list of confidential and proprietary information contained in the Sales Agent Program Agreement" at issue in the case and thus "provide[d] insufficient notice as to the actual trade secrets misappropriated."

specify in the complaint whether it is pursuing a direct or agency theory of liability, or both.

Defendants also argue that FUTSA does not allow for vicarious liability, and thus that neither Stellar nor Akley can be liable because they are not alleged "to have themselves taken anything." (*Id.* at 13.) Defendants state that "Courts are split on the issue, and Florida has not . . . spoken directly to the issue." (*Id.* at 12.) Defendants cite to *Thola v. Henschell*, 164 P.3d 524, 528 (Wash. Ct. App. 2007), which actually held that "a defendant may be vicariously liable under the UTSA." *Thola* also states that "[a]ll but one of the jurisdictions that have ruled on this question have held that the theory of vicarious liability is compatible with a UTSA cause of action." *Id.* Defendants provide no persuasive authority or argument for why FUTSA does not allow for vicarious liability.

Moreover, the language of FUTSA does not require a defendant to "take" anything to be liable. The definition of "misappropriation" provided in FUTSA includes "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" and "[d]isclosure or use of a trade secret . . . by a person who: 1. Used improper means to acquire knowledge of the trade secret . . . ." Fla. Stat. § 688.002(2). "'Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." Fla. Stat. § 688.002(1).

25

Accordingly, Plaintiff need not plead an agency theory of liability between Frady and Akley.  It is sufficient that Plaintiff alleges that Akley knew or should have known that Frady had a duty to maintain the subject information's secrecy and induced Frady to breach this duty.  (Doc. 55 ¶ 35.)  With regard to Stellar, Plaintiff alleges that Akley was the COO of Stellar (*id.* ¶ 29), and that Akley acted within the scope of her employment and for the benefit of Stellar (*id.* ¶ 36), thereby sufficiently alleging either a direct or vicarious theory of liability.

### 4.     Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and Civil Conspiracy

As it is recommended that the FDUTPA and civil conspiracy counts be dismissed without prejudice based on preemption, the undersigned will not address additional arguments regarding these counts.

### 5.     Supplemental Jurisdiction

Defendants argue that the Court should decline supplemental jurisdiction over the state law claims as Plaintiff has not stated a cause of action for the federal claims.  As the undersigned recommends that Plaintiff has stated a cause of action under the CFAA, this argument is moot.

### V.     Conclusion

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that:

1.     Count II (Breach of Duty of Loyalty), Count III (Violation of the SCA)

Count VI (Conversion), Count VII (Violation of FDUTPA), and Count VIII (Civil Conspiracy) of the TAC (Doc. 55) be **DISMISSED without prejudice** to Plaintiff filing a Fourth Amended Complaint within 14 days from the Court's order on this Report and Recommendation.

      2.    The Frady Motion (**Doc. 58**) and the Stellar and Akley Motion (**Doc. 66**) be otherwise **DENIED**.

      **DONE AND ENTERED** at Jacksonville, Florida, on January 20, 2015.

_Joel B. Toomey_

JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record